[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF
APPEALS
ELEVENTH CIRCUIT
MARCH 18, 2002
THOMAS K. KAHN

_____

No. 01-10192

_____

D. C. Docket No. 00-00151-CV-1-DHB

CORY D., by and through his mother and
next friend, DIANE D.,

Plaintiff-Appellant,

versus

BURKE COUNTY SCHOOL DISTRICT,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(March 18, 2002)**

Before BLACK, HILL and STAPLETON*, Circuit Judges.

BLACK, Circuit Judge:

---

*Honorable Walter K. Stapleton, U.S. Circuit Court Judge for the Third
Circuit, sitting by designation.

Appellant Cory D. appeals the district court's entry of summary judgment in favor of Appellee Burke County School District. The primary issue on appeal concerns the appropriate limitations period for appealing an educational agency's final administrative decision under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400-1491. Appellant contends Georgia's two-year personal injury limitations period should be used for actions brought under the IDEA, rather than the 30-day limitations period applicable to administrative appeals. *Compare* Ga. Code Ann. § 9-3-33 (personal injury statute of limitations), *with* Ga. Code Ann. § 50-13-19(b) (time limit for administrative appeals under the Georgia Administrative Procedure Act). Alternatively, even if a 30-day limitations period for requesting judicial review is applied to the IDEA, Appellant suggests the time to appeal an agency's final determination can be extended pursuant to Georgia's Renewal Statute, Ga. Code Ann. § 9-2-61. For the reasons discussed below, we affirm the ruling of the district court.

## I. BACKGROUND

### A. Statutory Framework of the IDEA

The IDEA creates a federal grant program to assist state and local agencies in educating disabled children. *See* 20 U.S.C. § 1412. To receive funds under the IDEA, states must provide disabled children with the opportunity to receive a "free

appropriate public education" by offering each student special education and related services under an individualized education program (IEP). *See* 20 U.S.C. § 1412(a)(1), (a)(4). To ensure children with disabilities and their parents are guaranteed procedural safeguards with respect to each IEP, the IDEA requires states to establish, and abide by, certain measures. *See* 20 U.S.C. § 1415(a). Among these measures is a requirement that if parents of a disabled child disagree with their local educational agency regarding the appropriateness of the child's current IEP, and informal review procedures have failed, the parents have the right to resolve the matter in an impartial due process hearing to be conducted by the agency. *See* 20 U.S.C. § 1415(f); *see also* 34 C.F.R. § 300.507. Moreover, following a final administrative determination, the parents retain the right to challenge the decision of the educational agency through a civil action brought in either state or federal court. *See* 20 U.S.C. §1415(i)(2). While such administrative and judicial review proceedings run their course, absent a contrary agreement by the parties, "the child shall remain in the then-current educational placement." *See* 20 U.S.C. § 1415(j) (the IDEA's "stay put" provision); *see also* 34 C.F.R. § 300.514. The IDEA, however, imposes no time limit in which parents must exercise their right to judicial review. *See generally* 20 U.S.C. § 1415(i).

B.    Factual Background

Appellant is a 17-year-old boy who suffers from mild mental retardation, Attention Deficit Hyperactivity Disorder, seizures, and chronic depression. As such, he qualifies for special education and related services under the IDEA. *See generally* 20 U.S.C. §§ 1411-1427. Appellant receives his services through the Burke County School District.

From 1996 through 1999, Appellant experienced repeated behavioral problems at school, including incidents of shoving and threatening fellow students and teachers. On December 2, 1999, Appellant again pushed a teacher, who had found him wandering the halls and disrupting classes during his scheduled lunch period. In accordance with the IDEA, Appellee assembled a manifestation determination team (MDT) and set a manifestation determination hearing for December 8, 1999. *See* 20 U.S.C. § 1415(k)(4)(A). The MDT determined Appellant's behavior was unrelated to his disability.[1] The MDT's finding was then referred to Appellee's disciplinary tribunal. Based on the MDT's finding, the tribunal expelled Appellant on December 17, 1999.

---

[1]Section 1415(k)(5)(A) states that if the behavior of a child with a disability is determined not to be a manifestation of his or her disability, "the relevant disciplinary procedures applicable to children without disabilities may be applied . . . ."

Five days after Appellant's expulsion, his mother filed a request for an administrative due process hearing under the IDEA to challenge the MDT's procedures and ultimate finding. *See* 20 U.S.C. § 1415(k)(6). During the hearing, Appellant claimed he was not receiving the "free appropriate public education" mandated by the IDEA as a result of Appellee's actions. *See* 20 U.S.C. § 1412(a)(1). He further claimed he should "stay put" in his then-current IEP until the appeals process was exhausted. *See generally* 20 U.S.C. § 1415(j). On January 20, 2000, an administrative law judge (ALJ) upheld all procedures and findings of the MDT.

On February 8, 2000, Appellant filed an action in the Superior Court of Burke County, Georgia, challenging the ALJ's decision. Three months later, however, Appellant filed a voluntary dismissal of his state court action. On August 4, 2000, nearly seven months after the ALJ's final ruling, Appellant filed the instant action in federal court. Borrowing the 30-day statute of limitations applicable under the Georgia Administrative Procedure Act (Georgia APA), Ga. Code Ann. § 50-13-19(b), the district court concluded Appellant failed to timely seek judicial review. Accordingly, the district court entered summary judgment in favor of Appellee.

## II. DISCUSSION

A.    Statute of Limitations

When Congress fails to specify a limitations period in federal legislation, courts must borrow the statute of limitations from the most analogous state statute, provided the borrowed limitations period is not "inconsistent with underlying federal policies." *See, e.g., Oneida County v. Oneida Indian Nation*, 470 U.S. 226, 240, 105 S. Ct. 1245, 1254-55 (1985). Accordingly, we must (1) determine which Georgia statute is most analogous to the IDEA, and (2) ensure the applicable limitations period is not inconsistent with the IDEA's objectives.

### 1.    Most Analogous State Statute

This Court must first decide whether a personal injury claim, advocated by Appellant, or a request for judicial review under the Georgia APA, applied by the district court, is most analogous to requests for judicial review under the IDEA. In making this determination, "'courts look to whether the scope of judicial proceedings available to a plaintiff under [each] state act is similar to the review available under [the IDEA]'." *Livingston Sch. Dist. Nos. 4 & 1 v. Keenan*, 82 F.3d 912, 915 (9th Cir. 1996) (quoting *Dep't of Educ. v. Carl D.,* 695 F.2d 1154, 1157 (9th Cir. 1983)).

Both the Georgia APA and the IDEA provide for judicial review of agency determinations.[2]  Under both statutes, the reviewing court acts in a quasi-appellate manner, scrutinizing the underlying proceedings for procedural regularity and substantive validity.  *See, e.g., Spiegler v. District of Columbia*, 866 F.2d 461, 465-66 (D.C. Cir. 1989)*; Adler v. Educ. Dep't,* 760 F.2d 454, 458 (2d Cir. 1985). Further, under both statutes, reviewing courts rely heavily on the administrative record.  *See* Ga. Code Ann. § 50-13-19(g); 20 U.S.C. § 1415(i)(2).  Although the IDEA permits the reviewing court to accept additional evidence at the request of a party, this fact does not significantly distinguish the nature of the proceedings from appellate review of agency decisions because, in both cases, the primary evidence relied upon is the administrative record itself.  *See Bd. of Educ. v. Rowley*, 458 U.S. 176, 205, 102 S. Ct. 3034, 3050 (1982).

Additionally, both the Georgia APA and the IDEA mandate some level of deference to the findings of an agency's decision-maker.  Under the Georgia APA, an agency's decision is scrutinized only for abuse of discretion.  *See* Ga. Code Ann. § 50-13-19 (permitting reversal of agency decisions that are (1) made in excess of

_____

[2]In evaluating state agency actions under the IDEA, the district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." *See* 20 U.S.C. 1415(i)(2)(B).

7

the agency's statutory authority; (2) based upon unlawful procedure; (3) affected by other error of law; (4) clearly erroneous on the whole record; or (5) arbitrary or capricious). Similarly, under the IDEA, a district court is required to respect a state hearing officer's findings when they are thoroughly and carefully made. *See Bd. of Educ. v. Rowley*, 458 U.S. at 206, 102 S. Ct. at 3050-51 (stating reviewing courts must give "due weight" to the administrative proceeding). The IDEA's provision that a reviewing court base its decision on the preponderance of the evidence is, therefore, no invitation to "substitute [the court's] own notions of educational policy for those of the school authorities which they review." *Id.*

By contrast, an action for personal injury is an independent claim which does not involve review of administrative decisions. Thus, such an action does not involve either review of a record assembled in underlying proceedings or any level of deference to administrative findings. *See, e.g., Livingston Sch. Dist.*, 82 F.3d at 916. A civil action under the IDEA challenging an administrative hearing officer's education decision after a due process hearing, therefore, is more analogous to judicial review of an administrative appeal than to causes of action for personal injury. As a result, the Georgia APA is the most analogous state statute. Unless inconsistent with the policies underlying the IDEA, therefore, the Georgia APA's 30-day limitations period should be applied to Appellant's cause of action.

2.      Consistency with Underlying Federal Policies

The fundamental objective of the IDEA is to empower disabled children to reach their fullest potential by providing a free education tailored to meet their individual needs.  *See generally* 20 U.S.C. § 1400(d).  There is a split between the circuits, however, as to whether this objective is better served by a short or more lengthy limitations period for judicial appeals of final decisions by an educational agency.  Several circuits have emphasized the need for prompt resolution of educational disputes and, therefore, applied the relatively brief limitations periods found in various states' administrative procedure acts.  *See C.M. ex rel. J.M. v. Bd. of Educ.*, 241 F.3d 374 (4th Cir.), *cert. denied*, 122 S. Ct. 48 (2001) (applying a 60-day statute of limitations); *Dell v. Bd. of Educ.*, 32 F.3d 1053 (7th Cir. 1994) (applying a 120-day statute of limitations); *Amann v. Town of Stow*, 991 F.2d 929 (1st Cir. 1993) (applying a 30-day statute of limitations); *Adler v. Educ. Dep't*, 760 F.2d 454 (2d Cir. 1985) (applying a 120-day statute of limitations); *Dep't of Educ. v. Carl D.*, 695 F.2d 1154 (9th Cir. 1983) (applying a 30-day statute of limitations).[3]

---

[3]Some circuits explicitly require school authorities to demonstrate that the parents have been given clear and complete notice of all "procedural safeguards available . . . under this section" prior to rigidly applying a relatively brief statute of limitations to IDEA appeals under § 1415(i)(2).  20 U.S.C. 1415(b)(1)(D); *see, e.g., Scokin v. Texas,* 723 F.2d 432, 438 (5th Cir. 1984)*; Spiegler,* 866 F.2d at 469; *Amann,* 991 F.2d at 933-34; *C.M. ex rel. J.M.,* 241 F.3d at 385-86.  We need not address the issue of notice, however, because Appellant filed his initial appeal in state court within 30 days of the final administrative decision and has been represented by counsel since December 1999.

Other circuits, stressing the importance of parents' active participation in the education of their children, have held a brief limitations period is fundamentally inconsistent with congressional goals. *See, e.g., Tokarcik v. Forest Hills Sch. Dist.*, 665 F.2d 443 (3ᵈ Cir. 1981) (suggesting the two-year statute of limitations applicable to personal injury and medical malpractice actions should govern IDEA appeals); *Scokin v. Texas*, 723 F.2d 432 (5th Cir. 1984) (applying a two-year statute of limitations grounded in state tort law); *Janzen v. Knox County Bd. of Educ.*, 790 F.2d 484 (6th Cir. 1986) (borrowing a three-year statute of limitations from state tort law); *Birmingham v. Omaha Sch. Dist.*, 220 F.3d 850 (8th Cir. 2000) (applying a two-year statute of limitations grounded in state tort law).[4] Upon review, we agree with the First, Second, Fourth, Seventh, and Ninth Circuits, and conclude a relatively short limitations period best serves the policies underlying the IDEA.

The most effective means of ensuring disabled children receive an education tailored to meet their specific needs is to provide prompt resolution of disputes over a child's IEP. A brief limitations period guarantees students will receive their

---

[4]In their view, an unduly short limitations period not only thwarts the intended collaborative nature of the IDEA by prematurely forcing parents into formal adversarial hearings to preserve their procedural rights, but such a period also dilutes the procedural rights' effectiveness by denying parents sufficient time to consider and evaluate an adverse decision by school authorities. *See, e.g., Tokarcik*, 665 F.2d at 451; *Scokin*, 723 F.2d at 436-37; *Janzen*, 790 F.2d at 487-88; *Birmingham*, 220 F.3d at 855.

statutorily prescribed education when they can most benefit from it. The IDEA recognizes children develop quickly and once correct placement decisions can soon become outdated. *See* 20 U.S.C. § 1414(d)(4) (setting forth the IDEA's requirement of annual placement reassessments). If the limitations period for judicial review under the IDEA is too long, appropriate remedies will be delayed by potentially protracted litigation. In the meantime, an already disadvantaged child's education will stagnate, awaiting placement decisions that may become obsolete even before implementation. *See C.M. ex rel. J.M.*, 241 F.3d at 380. As stated by the Fourth Circuit:

> The Act's intent would obviously be thwarted if placement decisions were not carried out until after a child could benefit from those placements. Senator Williams, the IDEA's principal author, recognized this in the final Senate debate, stating that "I cannot emphasize enough that delay in resolving matters regarding the education program of a handicapped child is extremely detrimental to his development."

*Id.* (citations omitted). Conversely, Appellant's request would permit a child who was incorrectly evaluated to remain in an inappropriate educational program for up to two years following the agency's final administrative decision, *before* judicial review even commenced. In light of the IDEA's "stay put" provision, Congress could hardly have contemplated a limitations period of two years plus pendency of the proceedings. *See Adler*, 760 F.2d at 459.

Even Department of Education regulations governing the IDEA's administrative proceedings recognize the importance of prompt review. The regulations require that not later than 45 days after a request for an administrative hearing, such a hearing is held and the education agency's final decision is reached. Furthermore, administrative review of final decisions must be completed within 30 days. *See* 34 C.F.R. § 300.511(a), (b). Just as deadlines throughout the administrative process are compressed, it follows that judicial review of that same process should also take place in a brief period of time. *See Dell v. Bd. of Educ.*, 32 F.3d 1053, 1061 (7th Cir. 1994).

Finally, although Appellant contends parental concern for a child's welfare serves as an effective mechanism for ensuring timely review,[5] the effectiveness of a federal statute should not be permitted to fluctuate with varying degrees of parental motivation. Under a two-year limitations period, two children in exactly the same educational dilemma could receive drastically divergent protection under the IDEA, a result Congress could not have intended. To be evenhanded and effective in its application, the IDEA must ensure the intended promptness is unilaterally achieved.

---

[5]*See, e.g., Scokin*, 723 F.2d at 437; *Tokarcik*, 665 F.2d at 453 ("Few would doubt that most parents desire a prompt resolution of their child's educational placement.").

Although the brevity of a 30-day limitations period may appear to frustrate parental involvement in a child's education, several facets of the IDEA mitigate the limitation period's potentially harsh effect. First, the parents' sole obligation during the 30-day limitations period is to decide whether to sue under § 1415(i)(2), a decision they need make only *after* an objection or complaint has been registered with the educational agency, the issues have been defined, the dispute has previously been heard in both informal proceedings and the agency's due process hearing, and an administrative record has been created. Parties contemplating filing for judicial review under the IDEA, like parties considering judicial review under a state's administrative procedure statute, do not face the otherwise ordinary pre-litigation burdens of factual investigation and legal research. Rather, the relevant facts already have been developed in the administrative process. *See Amann*, 991 F.2d at 933; *see also Adler*, 760 F.2d at 457.

More notably, the IDEA requires IEPs be reviewed and revised at least annually, allowing parents to litigate anew the merits of each subsequent IEP. *See* 20 U.S.C. § 1414(d)(4)(A)(i), (ii). Even if parents neglect to appeal within the 30-day limitations period, their children will only lose their "appropriate" educational placement for a single school year. *See Spiegler*, 866 F.2d at 468. As compared

13

with the potential for even greater delay under a two-year statute of limitations, this is the better result.

B.     Georgia Renewal Statute

Even if a 30-day limitations period is applied to initiating judicial review under the IDEA, Appellant argues the Georgia Renewal Statute's tolling provision should revive his claim. *See* Ga. Code Ann. § 9-2-61(a). The Renewal Statute states:

> When any case has been commenced in either a state or federal court within the applicable statute of limitations and the plaintiff discontinues or dismisses the same, it may be recommenced in a court of this state or in a federal court either within the original applicable period of limitations or within six months after the discontinuance or dismissal, whichever is later . . . .

*Id.* Because his federal action was commenced a mere three months after his state court action was voluntarily dismissed, Appellant asserts his claim should be considered timely.

A federal court adopting a state's statute of limitations ordinarily gives effect to that state's tolling provisions. *See Hardin v. Straub*, 490 U.S. 536, 539, 109 S. Ct. 1998, 2000 (1989). The tolling provisions, however, will not apply when such application defeats the goals of the federal law at issue. *Id*. In this case, because Appellant's federal complaint was filed less than six months after he voluntarily dismissed his state court challenge, application of the Renewal Statute would toll

the statute of limitations. Such application, however, would frustrate the IDEA's goal of promptly resolving educational disputes. Specifically, the Renewal Statute's six-month extension would grossly distend the compressed procedural mechanism prescribed by the IDEA and its "borrowed" 30-day limitations period, thereby allowing the same unnecessary delay Congress intended to prevent. Furthermore, the Renewal Statute's application could delay resolution of the educational dispute for not just a *total* of six months, but for six months from the date a plaintiff chooses to dismiss his or her initial action, whenever that might be. This potential for indefinite lingering clearly runs afoul of the IDEA's objectives.

## III. CONCLUSION

In light of the IDEA's goal of resolving educational disputes involving children with special needs promptly and effectively, we conclude the 30-day limitations period embodied in Ga. Code Ann. § 50-13-19(b), without the tolling provisions of the Georgia Renewal Statute, Ga. Code Ann. § 9-2-61, most closely corresponds with both the purpose and function of the statute. Accordingly, we affirm the decision of the district court.

AFFIRMED.