[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 10, 2002
THOMAS K. KAHN
CLERK

No. 02-11578

D.C. Docket No. 00-02087-CV-CC-1

GEORGIA STATE DEPARTMENT
OF EDUCATION,

Plaintiff-Counter-
Defendant-Appellant,

versus

DERRICK C.,
ZENA CHERRY,
NORMAN CHERRY,

Defendants-Counter-
Claimants-Appellees.

Appeal from the United States District Court
for the Northern District of Georgia

**(December 10, 2002)**

Before CARNES, HILL and FARRIS*, Circuit Judges.

_____
*Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by
designation.

CARNES, Circuit Judge:

The Georgia State Department of Education ("the Department") brought this appeal in order to have us decide whether the "stay-put provision" of Part B of the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400-1491 (IDEA), applies to a child who, at the time he turned three years of age and came within the purview of Part B, disputed his Part B placement. That is an issue of first impression in our court, and the Department says that we need to decide it so that the district courts and parties involved in similar disputes will have some guidance.

However, our guidance-providing role is subordinate to our primary responsibility which is to decide each appeal that is brought before us. Because the lawsuit that led to this appeal was barred by the statute of limitations, we do not address the merits issue involving the IDEA stay put provision. If the Department had wanted that issue decided, it should have brought the case to court sooner.

## I.  FACTS AND PROCEDURAL HISTORY

Derrick C. is a child with autism and a language disorder. When he was one year old, Georgia's Department of Human Resources ("DHR"), which is responsible for providing services under Part C of the IDEA, found him to be a disabled child under Part C and placed him at the Walden School. As Derrick C.'s

2

third birthday approached, his family and DHR met with the Dekalb County School District ("the District") about his transition from Part C services which were provided by DHR to Part B services which were to be provided by the Department. The District provided an Individualized Education Program ("IEP") for Derrick C., but Derrick C.'s family rejected it. The family sought a due process hearing to resolve its challenge to the IEP, and it requested the Department to keep Derrick C. in the Walden School under the IDEA's stay-put provision in Part B, 20 U.S.C. § 1415(j), pending resolution of that dispute. The Department refused to do that.

During the time it took to resolve the IEP issues, Derrick C.'s parents kept him at the Walden School at their own expense. Derrick C.'s parents and the District resolved the IEP dispute in January 2000, when they agreed to continue Derrick C.'s placement at the Walden School. The District refused to reimburse Derrick C.'s family for the money it had spent keeping him at the Walden School during the dispute, because the District believed that duty fell on the Department. Derrick C. filed an administrative action against the District, seeking reimbursement of the money that had been spent to keep him at the Walden School while the issue involving his placement was being decided. Eventually, both Derrick C. and the District agreed that the reimbursement issue was between

Derrick C. and the Department, so he added the Department as a party to the administrative action on January 20, 2000.

On February 18, 2000, the Administrative Law Judge (ALJ) determined that "[the Department] is responsible for Derrick C.'s 'stay-put' rights," and she ordered the Department to reimburse Derrick C. for the Walden School tuition, as well as for costs incurred for speech and language services for Derrick C. during the relevant period. According to Derrick C., from the end of February until August 2000, he tried to have the Department implement the ALJ's order, but the Department refused to do so.

It was not until August 14, 2000, almost six months after the ALJ entered her decision, that the Department filed its complaint in the district court appealing the ALJ's decision. Derrick C. moved the district court to dismiss on the ground that, among other things, the Department's action was barred by the applicable statute of limitations, which he contended is the 30-day limitations period provided in Georgia's Administrative Procedures Act, Ga. Code § 50-13-19(b). The district court disagreed, determining that the Department's lawsuit was most analogous to a claim under state law for monetary relief, which in Georgia carries a four-year statute of limitations. It denied the motion to dismiss on statute of limitations grounds.

On the merits, the parties filed cross-motions for summary judgment (although Derrick C. called his a motion for final judgment). The district court denied the Department's motion and granted Derrick C.'s, entering judgment in his favor based upon its conclusion that under the stay-put provision of Part B, 20 U.S.C. § 1415(j), Derrick C. is entitled to be reimbursed for the costs incurred for his placement while the issue of his Part B placement was being resolved. The Department appeals the judgment, arguing that the district court was wrong on the merits. Derrick C. defends the judgment on the merits and also on the ground that the Department's action in the district court was barred by the statute of limitations, anyway.[1]

## II. DISCUSSION

The Department filed its action in district court to challenge the ALJ's decision in favor of Derek C. 176 days after the decision was issued. Whether that was too late depends upon which statute of limitations applies. If, as Derek C.

---

[1]The Department contends that Derrick C. cannot raise the statute of limitations issue in this court because he did not cross-appeal the district court's ruling against him on that issue. That contention is wrong. See Sanchez-Velasco v. Secretary of the Dep't of Corr., 287 F.3d 1015, 1026 (11th Cir. 2002) ("An appellee may, without cross-appealing, urge in support of a result that has been appealed by the other party any ground leading to the same result, even if that ground is inconsistent with the district court's reasoning."); accord, El Paso Natural Gas Co. v. Neztsosie, 526 U.S. 473, 479, 119 S. Ct. 1430, 1434-35 (1982); Blum v. Bacon, 457 U.S. 132, 137 n.5, 102 S. Ct. 2355, 2359 n.5 (1982).

5

contends, the applicable limitations period is the 30-day one found in Georgia's

Administrative Procedures Act, Ga. Code § 50-13-19(b), the Department's filing in

district court was 146 days too late.  If, as the Department contends, the applicable

limitations period is the four-year one for unjust enrichment under Ga. Code § 9-3-

25, then the action was filed soon enough and with three-and-a-half years to spare.


Because the IDEA does not contain a statute of limitations, see generally 20

U.S.C. § 1415(i); Cory D. ex rel. Diane D. v. Burke County Sch. Dist., 285 F.3d

1294, 1296 (11th Cir. 2002), we "must borrow the statute of limitations from the

most analogous state statute, provided the borrowed limitations period is not

inconsistent with underlying federal policies."  Cory D., 285 F.3d at 1297 (internal

marks omitted).  In doing that, we engage in a two-pronged analysis in which we

"(1) determine which Georgia statute is most analogous to the IDEA, and (2)

ensure the applicable limitations period is not inconsistent with the IDEA's

objectives."  Id.

The closest decision on point is the Cory D. one, where we answered the

question of which statute of limitations applies to an action filed in district court to

challenge the IDEA placement component of an ALJ's stay-put determination

under Part B.  One party touted the 30-day statute of limitations period borrowed

6

from Georgia's APA, while the other espoused Georgia's two-year limitations period for personal injury claims.  Id. at 1295.  We picked the 30-day one from Georgia's APA. Id. at 1301.

We first determined which Georgia statute was most analogous to the IDEA by "look[ing] to whether the scope of judicial proceedings available to a plaintiff under each state act is similar to the review available under the IDEA."  Id. at 1297 (internal marks omitted).  Comparing the Georgia APA and the IDEA, we noted several similarities between their scopes of review, including the fact that both statutes: (1) provide for judicial review of agency determinations; (2) have reviewing courts "act[] in a quasi-appellate manner" and "rely heavily on the administrative record"; and (3) "mandate some level of deference to the findings of an agency's decision-maker." Id.  In contrast, our comparison of the IDEA with an action for personal injury yielded no such similarities, because "an action for personal injury is an independent claim which does not involve review of administrative decisions."  Id. at 1298.  We concluded that "[a] civil action under the IDEA challenging an administrative hearing officer's education decision after a due process hearing, therefore, is more analogous to judicial review of an administrative appeal than to causes of action for personal injury.  As a result, the Georgia APA is the most analogous state statute." Id.

7

We then turned to the second prong of the limitations period borrowing inquiry, which required us to determine if applying the Georgia APA's 30-day limitations period would be consistent with the IDEA's objectives. Id. We recognized that "[t]he fundamental objective of the IDEA is to empower disabled children to reach their fullest potential by providing a free education tailored to meet their individual needs." Id. Noting the "split between the circuits . . . as to whether this objective is better served by a short or more lengthy limitations period for judicial appeals of final decisions by an educational agency," we agreed with those circuits favoring a short limitations period (the First, Second, Fourth, Seventh, and Ninth Circuits). Id. We concluded that "a relatively short limitations period best serves the policies underlying the IDEA," because "[t]he most effective means of ensuring disabled children receive an education tailored to meet their specific needs is to provide prompt resolution of disputes over a child's IEP." Id. at 1299. We held that the 30-day limitations period in Ga. Code § 50-13-19(b) applied.

The district court did not have the benefit of our Cory D. decision at the time it decided this case. If it had, we are confident that court would have reached the same decision we do, which is that Georgia's 30-day APA limitations period governs IDEA Part B stay-put reimbursement decisions, just as it does IDEA Part

B placement decisions.

Attempting to persuade us to the contrary, the Department contends that Cory D. is distinguishable because it concerned an action challenging a stay-put placement decision while this case raises only the issue of who is to pay the cost incurred by Derrick C.'s placement during one particular interval – the cost of his continued attendance at the Walden School while the placement dispute was being resolved. But most civil cases boil down to the issue of who pays, or who pays how much, and we are unpersuaded by the argument that we should find this case not as close to Cory D. as to Zipperer v. School Board of Seminole County, 111 F.3d 847, 851-52 (11th Cir. 1997).

The Zipperer case involved a disabled child who, having prevailed in his placement dispute before an ALJ, brought an action in the district court for an award of attorney's fees under the IDEA, 20 U.S.C. § 1415(e)(4)(B).[2] 111 F.3d at 848. The district court granted summary judgment in favor of the defendant school system on the ground that Florida's 30-day statute of limitations applicable to the appeal of administrative decisions applied, barring Zipperer's action. We reversed, holding that the four-year statute of limitations for claims based on statutory

_____

[2] We note that when the IDEA was amended in 1997, the attorney's fees provision of § 1415(e)(4)(B) was renumbered and is now § 1415(i)(3)(B). John T. ex rel. Robert T. v. Iowa Dep't of Educ., 258 F.3d 860, 864 n.2 (8th Cir. 2001).

9

liability under Florida Statute § 95.11(3)(f) applied instead.  Id. at 848, 851-52.  In doing so, we used the familiar two-step borrowing analysis.

First, we first determined in Zipperer that the attorney's fees claim was most analogous to a claim based on statutory liability under Florida Statute § 95.11(3)(f).  Id. at 851.  In doing so, we presaged Cory D. by recognizing that the shorter limitations period for appealing an administrative decision might apply in the context of a substantive appeal under § 1415(e)(2).  Id. at 850 n.1 (citing JSK v. Hendry County Sch. Bd., 941 F.2d 1563, 1570 n.1 (11th Cir. 1991)).  We determined, however, that a § 1415(e)(4) claim for attorney's fees is distinct from an IDEA substantive appeal under § 1415(e)(2), and because § 1415(e)(4) provides for an independent claim for attorney's fees which the district court, not the administrative agency, is to decide, Florida's statutory liability claim is the most analogous state statute for an IDEA attorney's fees action.  Id. at 851.

Second, in Zipperer we compared the policies underlying Florida Statute § 95.11(3)(f), the statutory liability provision, and the IDEA to see whether they were inconsistent.  Again, the distinction between a substantive appeal claim under § 1415(e)(2) and an attorney's fees claim under § 1415(e)(4) played a pivotal role in our analysis.  We explained that "a short period of limitations for claims brought pursuant to section 1415(e)(2) assures prompt resolution of disputes over education

plans for disabled children," while "the resolution of claims for attorneys' fees is less urgent and, in reality, is more likely to be resolved by the attorneys' interest in prompt payment than by a short period of limitations." Id. (internal quotation marks omitted). Because "[a] four-year period of limitations, like the award of attorneys' fees to parents who are prevailing parties, is likely to encourage the involvement of parents, as represented by attorneys, in securing appropriate public educations for their children," we concluded that "the application of a four-year statute of limitations to claims for attorneys' fees under the IDEA is consistent with the policies of the federal statute." Id. at 851-52. It was for those reasons that we held in Zipperer that the four-year statute of limitations in Florida Statute § 95.11(3)(f) was applicable to the appellant's claim. Id. at 852.

Zipperer and this case are somewhat similar because, in both, the placement decision was determined prior to the filing of the action in district court, and the issue before the court concerned the payment of money. But the different nature of the monetary issues in Zipperer and this case puts distance between the two. In Zipperer, the monetary issue was an attorney's fees claim brought under § 1415(e)(4), which calls upon the role of a district court as a trial court. The scope of judicial proceedings available to a plaintiff under the general state statutory liability statute is similar to that under the attorney's fees provision of the

11

IDEA because both involve the district court in its role as a trial court.

Here, in contrast, the monetary issue is whether Derrick C. should be reimbursed for the Walden School costs. That issue is part and parcel of the stay-put provision of § 1415(j). See Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359, 369-72, 105 S. Ct. 1996, 2002-04 (1985)[3]; James ex rel. James v. Upper Arlington City Sch. Dist., 228 F.3d 764, 767 (6th Cir. 2000). The issue, arising as a claim under § 1415(j) of the IDEA, is initially determined by an ALJ, and when a district court reviews an ALJ's decision of such a claim it does so pursuant to 20 U.S.C. § 1415(i)(2) (2000), which is the amended version of § 1415(e)(2).[4] When

_____

[3]Burlington concerned § 1415(e)(3), which has since been renumbered and is now § 1415(j). James ex rel. James v. Upper Arlington City Sch. Dist., 228 F.3d 764, 767 (6th Cir. 2000).

[4]When the IDEA was amended in 1997, § 1415(e)(2) became § 1415(i)(2). King ex rel. King v. Floyd County Bd. of Educ., 228 F.3d 622, 625 (6th Cir. 2000); Warren G. ex rel. Tom G. v. Cumberland County Sch. Dist., 190 F.3d 80, 83 (3d Cir. 1999). Section 1415(i)(2)(A) provides:

> Any party aggrieved by the findings and decision made under subsection (f) or (k) of this section who does not have the right to an appeal under subsection (g) of this section, and any party aggrieved by the findings and decision under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy.

20 U.S.C. § 1415(i)(2)(A) (2000).

12

the district court reviews an ALJ's decision of that type, it sits as a quasi-appellate court, not as a trial court. See Cory D., 285 F.3d at 1297. It sits as the district court was sitting in Cory D., not as the district court was sitting in Zipperer.

The unjust enrichment claim analogy proffered by the Department involves an independent claim in which the district court acts as a trial court, and for that reason is less close to the case at hand than the APA appeal analogy in which the district court sits in a quasi-appellate capacity to review the decisions of an ALJ. As we decided in Cory D., the Georgia APA, Ga. Code § 50-13-19(b), is the most analogous state statute. 285 F.3d at 1298.

Our inquiry does not end there, however, because we must compare the limitations period of the Georgia APA, Ga. Code § 50-13-19(b), with the objectives of the IDEA in order to determine if applying that 30-day limitations period is inconsistent with those objectives. Cory D., 285 F.3d at 1298. According to the Department, "the urgency that usually would apply because of the stated IDEA policy for speedy resolution of disputes is not present here because of the fact that [Derrick C. and his parents] settled their dispute with the local school system as to the appropriate placement and services for Derrick under the IDEA prior to the administrative decision that is challenged in this case." But that does not convince us a requirement that such appeals be filed within 30 days is

13

inconsistent with any IDEA objective.

To the contrary, a short limitations period is consistent with the objectives of the IDEA, which include ensuring "that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services" and ensuring "that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d)(1). And it is consistent with the purpose of the stay-put provision, which is "to prevent school districts from effecting unilateral change in a child's educational program." Erickson v. Albuquerque Pub. Schs., 199 F.3d 1116, 1121 (10th Cir. 1999) (internal quotation marks omitted).

Under the Department's position, a child could be awarded reimbursement costs by an ALJ, but not be able to enforce that decision until more than four years later, because the Department would have that long to decide whether to appeal the decision to federal court. That result would be untenable. The stay-put issues of placement and reimbursement for the cost of placement are intertwined. Parents' decisions about where to place their children while placement disputes are being settled could well turn on whether they will be reimbursed for the costs of that interim placement. Parents need to know sooner, rather than later, whether they will be reimbursed so they can make educational decisions for their disabled

14

children accordingly. See Susquenita Sch. Dist. v. Raelee S., 96 F.3d 78, 87 (3d

Cir. 1996) ("Without interim financial support, a parent's 'choice' to have his child

remain in what the state has determined to be an appropriate private school

placement amounts to no choice at all. The prospect of reimbursement at the end

of the litigation turnpike is of little consolation to a parent who cannot pay the toll

at the outset.")[5]; see also Cory D., 285 F.3d at 1299 ("If the limitations period for

judicial review under the IDEA is too long, appropriate remedies will be delayed

by potentially protracted litigation.").[6]

### III. CONCLUSION

Because the Georgia APA, Ga. Code § 50-13-19(b), is the state statute most

---

[5]We note that in Michael C. v. Radnor Township School District, 202 F.3d 642 (3d Cir. 2000), the Third Circuit stated that, where parents "unilaterally remove[] a child from an existing placement determined in accordance with state procedures, and put[] the child in a different placement that was not assigned through proper state procedures," those parents "act at their own financial risk, and will recover only if they are correct that local authorities have failed to provide the educational program to which their child is entitled under the IDEA." Id. at 651. That case is different from this one, because here Derrick C. was enrolled at the Walden School pursuant to the state's Part C procedures (although whether that placement constituted the "then current placement" under § 1415(j) is a disputed issue that we do not reach), and Derrick C.'s placement issue was resolved in his favor through settlement.

[6]We reject without further discussion the Department's alternative argument that it is entitled to have the limitations period equitably tolled because its delay in filing the district court action was occasioned by its indecisiveness about whether to challenge the ALJ's reimbursement decision.

15

analogous to the IDEA, and because it is not inconsistent with the purpose of the IDEA's stay-put provision, we hold that its 30-day limitations period applies to the Department's action brought under 20 U.S.C. § 1415(i)(2)(A) challenging the ALJ's decision on reimbursement. Because the Department's action was filed outside that limitations period, the district court reached the correct result in entering judgment against the Department.

AFFIRMED.