**I.M., by and through his Parents and next friends, C.C. and M.M., Plaintiffs**

v.

**NORTHAMPTON PUBLIC SCHOOLS and the Commonwealth of Massachusetts, Division of Administrative Law Appeals, Bureau of Special Education Appeals, Defendants.**

**Civil Action No. 11–30214–KPN.**

United States District Court, D. Massachusetts.

April 26, 2012.

Peter L. Smith, East Longmeadow, MA, for Plaintiffs.

Alisia E. St. Florian, Murphy, Hesse, Toomey & Lehane, LLP, Quincy, MA, James S. Whitcomb, Office of Attorney General, Springfield, MA, for Defendants.

*MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION TO SUBMIT ADDITIONAL EVIDENCE (Document No. 14)*

NEIMAN, United States Magistrate Judge.

Presently before the court is a motion—by I.M. by and through his parents, C.C. and M.M. ("Plaintiffs")—to submit additional evidence in support of their motion for summary judgment. The Northampton Public Schools ("NPS") and the Commonwealth of Massachusetts, Division of Administrative Law Appeals, Bureau of

Special Education Appeals ("BSEA") (collectively, "Defendants"), oppose Plaintiffs' request, arguing that the scope of the court's review should be limited to the administrative record. For the reasons that follow, the court agrees with Defendants and, accordingly, will deny Plaintiffs' motion.

## I. Procedural Background

The underlying claims in this action stem from a disagreement between NPS and Plaintiffs about the sufficiency of an individualized education plan ("IEP") developed for I.M. on November 22, 2010, pursuant to the Individuals with Disabilities Education Act ("IDEA") 42 U.S.C. § 1440 *et seq.* I.M., who at the time of the administrative hearing before the BSEA was ten years old, has been diagnosed with dystonic quadriplegic cerebral palsy in the severe range, cortical visual impairment, and apraxia of speech; his disability for purposes of the IDEA is not contested.

I.M. attended Leeds Elementary School in Northampton until April of 2010, at which time his parents withdrew him and applied for his placement at the Perkins School for the Blind in Watertown, Massachusetts. After Perkins accepted I.M., NPS sent Plaintiffs a Placement Consent Form which Plaintiffs signed and, in so doing, consented to the provision of services for I.M. at Perkins. NPS and Plaintiffs also agreed that they would develop I.M.'s new IEP after he began attending Perkins. Accordingly, in November of 2010, Plaintiffs met with members of the Perkins staff to develop I.M.'s new IEP, which IEP was eventually rejected in large part by Plaintiffs in January of 2011. Shortly after learning that Plaintiffs had rejected the IEP, NPS requested a hearing with the BSEA to determine "whether the IEP proposed by the Northampton Public Schools for the time period from November 22, 2010 to November 21, 2011, was reasonably calculated to provide I.M. with a free appropriate public education in the least restrictive environment." After taking evidence and hearing from the parties, the hearing officer issued a decision on June 3, 2011, finding that I.M.'s IEP passed muster under the IDEA. The present litigation is an appeal of that decision.

The BSEA's administrative record ("Administrative Record") has been filed with the court for its review. Plaintiffs, however, seek to submit and have the court consider additional evidence as well. In essence, Plaintiffs wish to present evidence that they claim impugns the testimony of Robert Hair ("Hair"), Education Director of the Perkins Lower School Program, whose testimony at the administrative hearing was found to be credible and upon which the hearing officer "relied heavily." The proffered documents include emails to Hair from Perkins staff members and "Cottage logs" from the residence where I.M. stayed during his overnights there. Plaintiffs argue that, despite Hair's testimony to the contrary during the administrative hearing, the content of the emails and logs demonstrate that Perkins was not ready for I.M.'s placement in the fall of 2010, thereby undermining both Hair's credibility and the findings of the hearing officer. Plaintiffs further posit that these emails were "not available" to them at the time of the administrative hearing.

In response, Defendants assert that the emails were not available to Plaintiffs because they failed to ask for them during the exchange of discovery and, in so doing, waived their opportunity to include them in the record. Moreover, Defendants argue quite persuasively that the evidence proffered does not substantially contradict Hair's testimony or provide much additional insight into the underlying issues before the court; that argument, however, is not

one the court needs to address. In short, the court concludes, for the reasons which follow, that the proffered evidence cannot appropriately be considered at this stage of the proceedings.

## II. The IDEA and Additional Evidence

The purpose of the IDEA is to "ensure that all handicapped children have available to them a free appropriate public education." 20 U.S.C. § 1400(d)(1)(A). The IDEA envisions a collaboration between school officials and parents to develop an education plan in which a free appropriate education ("FAPE") is provided to disabled students. *See id.* Also included in the IDEA are procedural safeguards available to the student and his or her parents, including a procedural due process hearing in front of an impartial hearing officer and the right to judicial review of that decision in federal court. *See* 20 U.S.C. § 1415(f)-(g). When a school or a parent invokes the right to judicial review, the IDEA instructs that the court "shall receive the records of the administrative proceedings; shall hear additional evidence at the request of a party; and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." *Id.* at (i)(2)(C).

As it turns out, the First Circuit was one of the first courts to comprehensively tackle the issue of what constitutes "additional evidence" under the IDEA. *See Burlington v. Dept. of Educ. for Com. of Mass.,* 736 F.2d 773 (1st Cir.1984). To be sure, courts have been accused of taking "different, conflicting, and often haphazard approaches to admitting additional evidence during the IDEA judicial review." Andriy Krahmal, et al., *"Additional Evidence" Under the Individuals with Disabilities Education Act; The Need for Rigor,* 9 Tex. J. on C.L. & C.R. 201, 202 (2004). In this court's opinion, however, courts in the First Circuit have, by and large, properly adhered to the principles for considering additional evidence set forth in *Burlington.*

In *Burlington,* the court explained that admitting evidence that duplicates or embellishes evidence already considered at the administrative hearing would be "entirely inconsistent with the usual meaning of 'additional'" and, instead, read "additional" to mean "supplemental." *Id.* at 790. Elaborating, the court offered examples of instances in which additional evidence may supplement the administrative record, such as "gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing." *Id.* The First Circuit offered this list in light of the Supreme Court's then-recent directive in *Board of Educ. of Hendrick Hudson Central School Dist., Westchester County v. Rowley,* 458 U.S. 176, 206, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982), that a reviewing court must give the findings of the administrative hearing due weight, noting, in effect, that less stringent standards for admitting new evidence would run afoul of that directive. *See Burlington,* 736 F.2d at 790. ("We are fortified in this interpretation because it structurally assists in giving due weight to the administrative proceedings, as *Rowley* requires."). This approach was reiterated several years later when the court explained that "a party seeking to introduce additional evidence at the district court level must provide some solid justification for doing so." *Roland M. v. Concord Sch. Comm.,* 910 F.2d 983, 996 (1st Cir.1990). "In the absence of special circumstances,"

the First Circuit continued, "courts should ordinarily exercise th[e] discretion [to consider testimony on judicial review] in favor of excluding the belatedly offered evidence." *Id.* at 997

Since *Burlington,* the lower courts have applied the First Circuit's directive in a variety of ways. *See, e.g., Doe v. Regional School Unit No. 21,* 2011 WL 3611449, at *2 (D.Me. Aug. 16, 2011) (allowing defendant's motion to supplement the record with evidence of student progress in a stay-put placement since time of administrative hearing); *School Union No. 37 v. Ms. C.,* 2006 WL 522103, at *3 (D.Me. Mar. 2, 2006) (denying additional evidence where plaintiff "had ample opportunity" to present such evidence at the administrative hearing); *Ms. K. ex rel. S.B. v. City of South Portland,* 403 F.Supp.2d 108, 113 (D.Me.2005) (denying evidence excluded by hearing officer where admitting it would "undercut the statutory role of the hearing officer and the goal of conserving judicial resources"); *Ms. M. ex rel. K.M. v. Portland Sch. Comm.,* 2002 WL 31757447, at *3 (D.Me. Dec. 10, 2002) (denying request for additional evidence regarding the child's asserted "illiteracy" where plaintiff failed to demonstrate "solid justification" for its introduction); *Lenn v. Portland School Committee,* 1992 WL 510895 (D.Me. Dec. 14, 1992), *aff'd,* 998 F.2d 1083, 1088 (upholding decision (appealed on other grounds) where judge "took a hands-on approach to the decisional process ... conduct[ing] what amounted to a mini-trial" in which additional documents and testimony were considered); *Norton Sch. Comm. v. Mass. Dept. of Educ.,* 768 F.Supp. 900, 911 (D.Mass.1991) (allowing evidence "which the parties ha[d] not yet had the opportunity to provide," but emphasizing that the court "will not allow the parties to repeat or embellish testimony already given to the hearing officer"); *Roe v. Westford,* 110 F.R.D. 380, 382 (D.Mass.1986) (additional discovery not allowed where no attempt had been made to introduce such evidence at the administrative hearing, finding that the discovery would "allow plaintiff 'to undercut the statutory role of administrative expertise' and involve a needless expenditure of judicial resources" (quoting *Town of Burlington,* 736 F.2d at 790)); *David D. v. Dartmouth Sch. Comm.,* 615 F.Supp. 639, 641 (D.Mass.1984) (allowing evidence that accrued subsequent to the hearing and evidence from witnesses who did not testify at the hearing), *aff'd* 775 F.2d 411 (1st Cir.1985). A careful review of these decisions would reveal that the courts in this circuit, despite some slight variation, have tried mightily to hew to the standards articulated in *Burlington* and *Roland.*

In essence, those two rulings obligate a court to "weigh heavily the important concerns of not allowing a party to undercut the statutory role of administrative expertise, the unfairness involved in one party's reserving its best evidence for trial, the reason the witness did not testify at the administrative hearing, and the conservation of judicial resources." *Roland M.,* 910 F.2d at 996 (quoting *Burlington,* 736 F.2d at 791). To do otherwise would run contrary to both the First Circuit's directives and the spirit of the IDEA, the purpose of which is to provide streamlined judicial review to ensure that disabled children are accorded appropriate education plans in a timely manner. *See Cory D. ex rel. Diane D. v. Burke County Sch. Dist.,* 285 F.3d 1294, 1299 (11th Cir.2002) ("The most effective means of ensuring disabled children receive an education tailored to meet their specific needs is to provide prompt resolution of disputes over a child's IEP.").

## III. The Proffered Evidence

A review of the proffered evidence here makes clear that none of it falls within the exceptions—or any fair extrapolation of those exceptions—articulated by the First Circuit. First, Plaintiffs give no indication that the failure to include the evidence was by virtue of a mechanical error, the unavailability of a witness, or the improper exclusion of evidence by the administrative agency; quite to the contrary, it is clear that no such improprieties are at issue here. Second, as importantly, the evidence proffered had accrued and would have been available to Plaintiffs by the time of the administrative hearing had they requested it. Having scoured the record, the court finds that the only discovery requests clearly reflected therein were requests for subpoenas, issued by the BSEA, to witnesses Nathan Ziegler, Rob Hair, Hillary Jellison, and Kathy Rielly. (A.R. at 74–75.) Plaintiffs point to no other attempts to retrieve information from Perkins prior to the hearing. Rather, Plaintiffs now describe only one instance, a letter sent on September 9, 2011, in which they requested documents related to I.M. from Perkins. That request, however, was not only made several months after the administrative hearing but nearly three months *after* the decision rendered by the hearing officer. Such belatedly offered evidence is generally excluded. *See Roland M.*, 910 F.2d at 983.

Here too, given Plaintiffs' failure to engage in thorough discovery at the administrative level, the court is disinclined to permit submission of the newly proffered evidence. To do otherwise would undercut the importance of the administrative hearing and the emphasis the IDEA places on exhausting administrative remedies before pursuing judicial review. *See Roland*, 910 F.2d at 997 ("While 'the legislative history of the Act reflects the understanding that exhaustion is not a rigid requirement . . .

litigants are discouraged from weakening the position of the agency by flouting its processes.' ") (quoting *Ezratty v. Com. of Puerto Rico*, 648 F.2d 770, 774 (1st Cir. 1981)).

To be sure, the examples articulated in *Burlington* were not meant to be an exhaustive list of possible exceptions. Plaintiffs, however, have failed to provide the court with any other "solid justification" for consideration of the proffered evidence. Such a justification is particularly necessary here given the character of the evidence Plaintiffs seek to admit, namely, documents that purportedly undermine Hair's credibility. As explained by the First Circuit, "[t]he court should look with a critical eye on a claim, such as made here, that the credibility of a witness is a central issue. The claim of credibility should not be an "open sesame" for additional evidence." *Burlington*, 736 F.2d at 791. This court, too, for all the reasons discussed, concludes that the proffered evidence falls within this questionable category.

## IV. Conclusion

For the reasons stated, the court will DENY Plaintiffs' motion to submit additional evidence.

IT IS SO ORDERED.