[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-14083

Non-Argument Calendar

_____

KIMBERLY POWELL,
as next of kin and on behalf of J.T.A. a minor,
themselves and all others similarly situated,
YVONNE WOLFE,
as next of kin and on behalf of C.L., a minor,
LYNETTE CLEWS,
as next of kin and on behalf of M.A.R., a minor,
ELICIA RODRIGUEZ,
as next of kin and on behalf of A.J.R., a minor,
MORGAN RICHARDS,
as next of kin and on behalf of D.R.R., a minor, et al.,

                                        Plaintiffs-Appellants.

*versus*

SCHOOL BOARD OF VOLUSIA COUNTY, FLORIDA,
a Political subdivision of the state of Florida,

                                                    Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:21-cv-01791-CEM-EJK

_____

Before ROSENBAUM, JILL PRYOR, and ABUDU, Circuit Judges.

PER CURIAM:

Kimberly Powell, as next of kin and on behalf of a minor, J.T.A., and all similarly situated minors ("Appellants"), filed a class action lawsuit against the School Board of Volusia County, Florida for allegedly violating the minors' rights to a free appropriate public education ("FAPE") in violation of the Individuals with Disabilities Education Act ("IDEA") and the Americans with Disabilities Act ("ADA").  The Appellants appeal the district court's order dismissing their amended complaint for failure to exhaust administrative remedies under the IDEA.

Given the Supreme Court's recent intervening decision in *Perez v. Sturgis Public Schools*, 143 S. Ct. 859, 865 (2023), which directly applies to the Appellants' case, we vacate the district court's

order of dismissal and remand the case for further proceedings consistent with the holding in *Perez*.

## A.

Appellants' amended complaint alleged claims under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), and Title II of the ADA, and sought injunctive relief, compensatory damages, and punitive damages. Specifically, Appellants alleged that the School Board routinely excluded students with disabilities from classroom instruction through the use of informal tactics, such as sending children home early, instructing parents to keep their children home even if they were not suspended, and otherwise removing them from the classroom and, thus, depriving them of an education. Appellants also alleged instances when the School Board would improperly suspend students or institute other formal disciplinary actions, as well as initiate procedures under the Baker Act, Fla. Stat. § 394.459 (2023). Appellants' overall contention is that the School Board systemically discriminated against students with disabilities by "relying on overtly punitive disciplinary tactics and law enforcement to address behaviors that are known, or should be known, manifestations of the students' disabilities."

## B.

Congress promulgated the IDEA with the purpose of ensuring "that all children with disabilities have available to them a [FAPE] . . ." 20 U.S.C. § 1400(d)(1)(A); *Cory D. ex rel. Diane D. v. Burke Cnty. Sch. Dist.*, 285 F.3d 1294, 1298 (11th Cir. 2002) ("The fundamental objective of the IDEA is to empower disabled

children to reach their fullest potential by providing a free education tailored to meet their individual needs."). To receive federal funds pursuant to the IDEA, states must comply with the statute's requirements. 20 U.S.C. § 1412(a). The IDEA contains an exhaustion requirement for certain claims, like the ones in this action, brought under statutes that may overlap with the IDEA, including the ADA and the Rehabilitation Act:

> Nothing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the [ADA], title V of the Rehabilitation Act of 1973 [including § 504], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under [the IDEA], the [IDEA's administrative procedures] shall be exhausted to the same extent as would be required had the action been brought under [the IDEA].

20 U.S.C. § 1415(l).

When Appellants filed this appeal, Eleventh Circuit precedent applied this exhaustion requirement even to suits seeking remedies unavailable under the IDEA, such as compensatory damages. *See, e.g.*, *M.T.V. v. DeKalb Cnty. Sch. Dist.*, 446 F.3d 1153, 1157–58 (11th Cir. 2006) (concluding that claims based on § 1983, the ADA, the Rehabilitation Act, and the First Amendment were all

subject to the IDEA's exhaustion requirement); *see also N.B. by D.G. v. Alachua Cnty. Sch. Bd.*, 84 F.3d 1376, 1379 (11th Cir. 1996) (same). Relying on *Alachua County*, the district court held that the Appellants were required to exhaust the IDEA's administrative process before pursuing their Rehabilitation Act and ADA claims because the gravamen of their amended complaint was a denial of a FAPE. The district court dismissed both claims for failure to satisfy the IDEA's exhaustion requirement.

We review *de novo* the dismissal of a complaint for failure to exhaust administrative remedies. *Babicz v. Sch. Bd. of Broward Cnty.*, 135 F.3d 1420, 1421 (11th Cir. 1998). As an initial matter, Appellee contends that Appellants have failed to meet the standard articulated in *United States v. Durham*, 795 F.3d 1329 (11th Cir. 2015) (en banc), for raising a new theory on appeal.

*Durham* held:

> [W]here there is an intervening decision of the Supreme Court on an issue that overrules either a decision of that Court or a published decision of this Court that was on the books when the appellant's opening brief was filed, and that provides the appellant with a new claim or theory, the appellant will be allowed to raise that new claim or theory in a supplemental or substitute brief provided that he files a motion to do so in a timely fashion after (or, as in this case, before) the new decision is issued. This new rule

applies in all direct appeals currently pending before us that involve an intervening Supreme Court decision and in all future direct appeals that do.

*Id.* at 1331.

This Court's September 14, 2023, Order directed the parties to file supplemental briefing discussing the impact of *Perez* on this appeal. Both parties responded to the Court's query, thus obviating the need of Appellants to file additional supplemental briefing.

Moreover, Appellee contends "Appellants ha[ve] not preserved any contention that exhaustion of the administrative remedies provided by [IDEA] was excused because they solely sought remedies not available under the IDEA." Appellants, of course, had no obligation to raise this specific argument below because the law at the time did not support such a contention. Indeed, *Perez*, which issued after the parties completed initial briefing, changed the law. The Supreme Court clarified that § 1415(l) does not require exhaustion of the administrative processes under the IDEA "where a plaintiff brings a suit under another federal law for compensatory damages—a form of relief [the] IDEA does not provide." 143 S. Ct. at 864; *id.* at 865 ("[A] suit admittedly premised on the past denial of a [FAPE] may nonetheless proceed without exhausting IDEA's administrative processes if the remedy a plaintiff seeks is not one IDEA provides."). Here, Appellants seek compensatory and punitive damages. The IDEA provides neither. Thus, applying *Perez* to this case, Appellants can proceed without attempting to exhaust administrative remedies that do not exist under the IDEA.

Appellee also argues that this Court should affirm the district court's order because Powell's amended complaint fails to unambiguously allege monetary compensatory damages. In other words, Appellee contends that it is unclear whether Plaintiffs are seeking compensatory education, which is a form of relief under the IDEA, or monetary damages which the IDEA does not provide. However, the first paragraph in the "General Allegations" section of the complaint expressly states: "This is a Class Action for both damages in excess of $50,000,000 including attorney's fee[s] and all allowable costs." Therefore, Appellants unambiguously sought compensatory *monetary* damages under the ADA and not compensatory education under the IDEA. Consequently, in light of *Perez*, the Appellants should have been allowed to proceed with their claims regardless of the IDEA's exhaustion requirements.

## CONCLUSION

We **VACATE** the district court's order and **REMAND** this case for further proceedings consistent with the Supreme Court's intervening *Perez* decision.