**AMENDED OPINION**

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ANN DOE AND JOHN DOE, parents and
next friends of TOM DOE,*
Plaintiffs-Appellants,

v.

BOARD OF EDUCATION OF BALTIMORE

No. 98-1075

COUNTY, a Body Corporate and
Politic of the State of Maryland;
ANTHONY G. MARCHIONE, Officially,
Superintendent,
Defendants-Appellees.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, District Judge.
(CA-96-3734-WMN)

Argued: October 27, 1998

Decided: December 10, 1998

Before HAMILTON and MOTZ, Circuit Judges, and BOYLE,
Chief United States District Judge for the Eastern District of North
Carolina, sitting by designation.

_____

Affirmed by published opinion. Judge Motz wrote the opinion, in
which Judge Hamilton and Chief Judge Boyle joined.

_____

*At the appellants' request, throughout we have substituted Ann Doe,
John Doe, and Tom Doe for their real names.

**COUNSEL**

**ARGUED:** John Doe, THE LAW FIRM OF JOHN DOE, P.A., Asheville, North Carolina, for Appellants. Leslie Robert Stellman, BLUM, YUMKAS, MAILMAN, GUTMAN & DENICK, P.A., Baltimore, Maryland, for Appellees.

_____

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

This case presents the question of whether attorney's fees are to be awarded for the legal services performed by an attorney in obtaining special education benefits for his child under the Individuals with Disabilities Education Act. The district court held that there was no entitlement to fees in these circumstances. We affirm.

I.

Tom Doe is a child eligible for special education and related services under the Individual with Disabilities Education Act, (IDEA), 20 U.S.C.A. §§ 1400-1487 (West 1990 & Supp. 1998). His parents, Ann Doe and John Doe, sought to have local public school authorities provide the Lovaas behavioral modification program to Tom. After receiving an adverse decision from a state hearing officer, the Does appealed to the Maryland Office of Administrative Hearings. An appeal panel of that Office found in their favor. The panel concluded that the Lovaas program constituted an appropriate educational program for Tom and ordered that school officials reimburse Mr. and Mrs. Doe for their expenses in providing this program.

When the Board of Education of Baltimore County (the Board) failed to comply with that order, Mr. Doe, an attorney, and his wife filed this action as the "parents and next friends of" Tom Doe. The Board and the Does ultimately agreed that the Board would reimburse the Does in the amount of $10,421.36 for the Lovaas program and $2,012.50 for expert witness fees in the administrative proceedings. The Does also sought an award of attorney's fees for the legal ser-

2

vices performed by Mr. Doe. The district court refused the request for attorney's fees, finding that when an attorney represents his own child in IDEA proceedings, the "congressional purpose in enacting the IDEA is best served by denying the award of fees." From that decision, the Does appeal.

II.

The Does sought attorney's fees under the fee-shifting provision of the IDEA, which has since been slightly, and immaterially, amended. The amended statute provides that

> [i]n any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a child or youth with a disability who is the prevailing party.

20 U.S.C.A. § 1415(e)(4)(B) (West Supp. 1998).

The Does maintain that the plain language of this statute permits an award of fees here, but the Board contends that the Supreme Court's decision in Kay v. Ehrler, 499 U.S. 432 (1991) prohibits such an award. Kay held that a pro se plaintiff who is an attorney cannot be awarded attorney's fees under the fee-shifting provision of the Civil Rights Attorney's Fees Awards Act, which contains language very similar to the IDEA provision. See 42 U.S.C.A. § 1988(b) (West Supp. 1998) ("the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."). The Kay Court reasoned that the term "attorney" in the fee-shifting provision "assumes an agency relationship, and it seems likely that Congress contemplated an attorney-client relationship as the predicate for an award under § 1988." Kay, 499 U.S. at 435-36.

The Court further found that "the overriding" purpose of the statute was to obtain "independent counsel for victims of civil rights violations" to "ensur[e] the effective prosecution of meritorious claims." Id. at 437. Permitting a pro se attorney-plaintiff to obtain fees was held not to serve this purpose because a pro se attorney "is deprived of the judgment of an independent third party in framing the theory

3

of the case, evaluating alternative methods of presenting evidence, cross examining hostile witnesses, formulating legal arguments, and in making sure reason, rather than emotion, dictates the proper tactical response to unforseen developments in the court room." Id. The Kay Court concluded:

> A rule that authorizes awards of counsel fees to pro se litigants -- even if limited to those who are members of the bar -- would create a disincentive to employ counsel whenever such a plaintiff considered himself competent to litigate on his own behalf. The statutory policy of furthering the successful prosecution of meritorious claims is better served by a rule that creates an incentive to retain counsel in every such case.

Id. at 438.

In the wake of Kay, two of our sister circuits have found the Kay Court's rationale regarding attorney-litigants to be applicable outside the § 1988 context; in both of these cases, the courts ruled that attorneys who successfully represent themselves in Freedom of Information Act claims cannot recover fees under that statute's fee-shifting provision. Burka v. United States Dep't of Health & Human Servs., 142 F.3d 1286, 1290 (D.C. Cir. 1998); Ray v. United States Dep't of Justice, 87 F.3d 1250, 1252 (11th Cir. 1996). No circuit, however, has dealt with a Kay-based challenge to fees for services of an attorney in successfully representing his or her own child in an IDEA claim. The Board maintains that the attorney-parent in an IDEA case "is, in fact, a pro se plaintiff for attorneys' fees purposes" and that Kay thus prohibits an attorney-parent from obtaining an award of fees under the IDEA.

The Board argues that certain statutory language supports its view that an attorney-parent's representation of his child in IDEA proceedings actually constitutes pro se representation. The IDEA undeniably establishes numerous parental rights. Parents are included in the "team" that determines a disabled child's appropriate "individualized education program" under the Act. 20 U.S.C.A.§ 1414(a)(20). No evaluation or reevaluation of a child can be made without obtaining parental consent. Id. §§ 1414(a)(1)(C)(iii), 1415(b)(1)(c). Moreover,

4

"[a]ny state educational agency" that receives IDEA funds must establish . . . procedures . . . to assure that children with disabilities and their parents or guardians are guaranteed procedural safeguards." Id. § 1415(a) (emphasis added). These procedural safeguards include "an opportunity for the parents or guardian of a child with a disability to examine all relevant records," the provision of "written prior notice to the parents or guardian of the child" of certain information, and the right of the "parents or guardian [to] an impartial due process hearing" on complaints pertaining to the treatment of the child's case under the Act. Id. § 1415(b). (emphasis added).

Contrary to the Board's contention, however, we do not believe that the IDEA's provision of rights to parents means that an attorney-parent actually represents himself when he pursues IDEA services for his child. Plainly, the focus of the IDEA is the educational needs of the disabled child, not the parents. State officials are charged with formulation of an individualized education plan for the child, not the parents. The adequacy of such a plan is determined by how appropriately it meets the needs of the child, not the parents. Even the wording of the IDEA fee-shifting provision supports the notion that the child is the focus of the IDEA, by providing fees "to the parents of a child or youth with a disability who is the prevailing party ." 20 U.S.C.A. § 1415(e)(4)(B) (emphasis added).

Though parents have some rights under the IDEA, the child, not the parents, is the real party in interest in any IDEA proceeding. The references to parents are best understood as accommodations to the fact of the child's incapacity. That incapacity does not collapse the identity of the child into that of his parents. Recognizing that parents and children are distinct legal entities under the IDEA, the Second and Eleventh Circuits have recently held that parents who are not attorneys may not appear pro se in court on behalf of their children in IDEA cases. See Wegner v. Canastota Cent. Sch. Dist., 146 F.3d 123 (2nd Cir. 1998); Devine v. Indian River County Sch. Bd., 121 F.3d 576, 581-82 (11th Cir. 1997), cert. denied , 118 S. Ct. 1040 (1998). For these reasons, we cannot agree, as the Board urges, that Mr. Doe is acting pro se in pursuing his son's IDEA claim, in the same fashion as Mr. Kay was in advancing his own civil rights claim. Thus, Kay v. Ehrler does not precisely parallel this case.

5

Yet Kay clearly does have relevance here. After all, the central thrust of Kay is that fee-shifting statutes are meant to encourage the effective prosecution of meritorious claims, and that they seek to achieve this purpose by encouraging parties to obtain independent representation. Like attorneys appearing pro se, attorney-parents are generally incapable of exercising sufficient independent judgment on behalf of their children to ensure that "reason, rather than emotion" will dictate the conduct of the litigation. Kay, 499 U.S. at 437. Certainly the danger that a child's meritorious claim will be ineffectively prosecuted by an irrationally emotional attorney-parent is at least equal to the danger that the meritorious claim of a pro se civil rights plaintiff, who is also a lawyer, will be bungled without the assistance of an independent attorney.

Indeed, although Mr. Doe obtained an excellent result for Tom -- complete reimbursement for the Lovaas program -- and although we do not in any way denigrate his care and effort in representing his son, this case illustrates the difficulties of encouraging inexperienced attorney-parents, via a statutory fee award, to represent their own children in IDEA proceedings. Because Mr. Doe failed to provide state officials with timely notice of his proposed witness list prior to the initial administrative due process hearing, the Does were not permitted to present the testimony of those witnesses at the hearing and the hearing examiner rejected their claim. If Mr. Doe had provided timely notice of the witness list, all subsequent proceedings in this case might, as the Does themselves note, have "been avoided altogether." Brief of Appellant at 4 n.1.[1] An attorney more familiar with the relevant procedures might well have obtained relief for Tom more quickly and at far less cost. Similarly, although the Does seek costs and pre- and post-judgment interest on appeal, they did not properly advance or preserve these rights in the district court. More experienced counsel would likely have alleged the right to interest in the complaint and sought costs pursuant to 20 U.S.C.§ 1415(e)(2).

_____

[1] The Does provided the Board with four, rather than the required five, days notice of the proposed witness list. We do not suggest that the hypertechnical insistence of the Board's attorney on five days notice is to be applauded. Such conduct seems unnecessary and graceless when dealing with inexperienced opposing counsel and a government program designed to benefit disabled children. However, graceless or not, the Board's counsel did act within his rights.

6

Indisputably, disabled children pursuing IDEA claims merit the very best representation. In their brief, the Does note that

> [t]he IDEA was enacted to develop a mechanism for providing disabled children with an opportunity to become functional in our society. No one is more likely to lead the fight for those children than a parent who has been scarred by a school district that refuses to comply with the IDEA. There is no reason to compound a child's handicap simply because his parent is an attorney.

Brief of Appellants at 9. We completely agree. Loving parents, like the Does will of course "fight" for their children -- with or without a statutory award of fees for their services. To permit an attorney-parent to recover statutory fees for representing his child in IDEA proceedings is thus not necessary to ensure a parent's efforts on behalf of his child, but it might well lessen the chance that a disabled child would have the benefit of legal services from an independent third party. In this way, such a holding would "compound" the "child's handicap simply because his parent is an attorney." Precisely because disabled children deserve independent legal services, the IDEA fee-shifting provision should be read to encourage parents to obtain independent legal services. Indeed, courts must take special care to protect the interests of children, given that an "infant is always the ward of every court wherein his rights or property are brought into jeopardy, and is entitled to the most jealous care that no injustice be done to him." Wegner, 146 F.3d at 125 (quoting Johns v. County of San Diego, 114 F.3d 874, 877 (9th Cir. 1997).

In sum, although an attorney-parent's representation of his child is not pro se representation, such that Kay is not on "all fours" with this case, much of the rationale articulated in Kay does apply here. That rationale provides a clear basis for invoking the judicially created special circumstances doctrine. In the context of other fee-shifting provisions, e.g., those in 42 U.S.C. § 1988 and Title VII of the Civil Rights Act of 1964, the Supreme Court has recognized that although a prevailing party "should ordinarily recover an attorney's fee," "special circumstances" can render "such an award unjust." See, e.g., Hensley v. Eckerhart, 461 U.S. 424, 429 (1983) (quoting Newman v. Piggie Park Enters. Inc., 390 U.S. 400, 402 (1968)) (§ 1988); Albemarle

7

Paper Co. v. Moody, 422 U.S. 405, 415 (1975) (Title VII) (dicta). Although the Court has not discussed the special circumstances doctrine in connection with the IDEA fee-shifting provision, the legislative history indicates that Congress intended courts to interpret it as they have § 1988 and Title VII. See S. Rep. No. 99-112, at 13-14 (1985), reprinted in 1986 U.S.C.C.A.N. 1798, 1803-04.

Courts have universally recognized that this "special circumstances" exception is very "narrowly limited." See, e.g., Bonnes v. Long, 599 F.2d 1316, 1318 (4th Cir. 1979), overruled on other grounds by S-1 & S-2 v. State Bd. of Educ., 21 F.3d 49, 51 (4th Cir. 1994). Only on rare occasions does a case present such circumstances, see, e.g., Chastang v. Flynn & Emrich Co., 541 F.2d 1040, 1044-45 (4th Cir. 1976), and we have uncovered no case in which any circuit has found a basis for the special circumstances exception in a situation similar to that at hand.[2] However, given a parent's special and close relationship with his or her child, we believe that Kay does provide a basis for invoking the narrow special circumstances exception here. We note that the district judge in this case, another distinguished district judge in this circuit, and the Indiana Supreme Court have reached a similar conclusion. See Rappaport v. Vance, 812 F. Supp. 609 (D. Md. 1993), appeal dismissed, 14 F.3d 596 (4th Cir. 1994); accord, Miller v. West LaFayette Community Sch. Corp., 665 N.E.2d 905 (Ind. 1996).

We recognize, of course, that other judgments could be made as to how the policy interest in ensuring "effective prosecution of meritorious claims" is best served. For example, reimbursing pro se attorney-plaintiffs, who have prevailed in difficult, unpleasant cases when they

_____

[2] Prior to Kay, the Ninth Circuit suggested that determination of whether "special circumstances" exist in an IDEA case involves examination of "two factors: (1) whether awarding fees would further the congressional purpose in enacting" IDEA and "(2) the balance of the equities." Abu-Sahyun v. Palo Alto Unified Sch. Dist., 843 F.2d 1250, 1253 (9th Cir. 1988). Neither the Supreme Court nor this court has embraced this two-part test in subsequent IDEA cases and we decline to do so here. This "test" contains no real standards and provides no legitimate reason for departing from the usual rule of awarding reasonable fees to prevailing plaintiffs under fee-shifting statutes.

can demonstrate that they could not obtain other representation, could well be found to further this interest. But, nothing in Kay suggests that the difficulty of a case or the failure to find other counsel provide a ground for awarding fees to a prevailing pro se attorney-plaintiff. Moreover, contrary to the Does' suggestion, the Kay Court specifically refused to base its rationale on a need to eliminate abusive or meritless claims. Thus, we cannot deduce that when an attorney advocates a nonabusive claim, a different result is mandated. Instead, the Kay Court held that encouraging independent representation by prohibiting statutory awards to pro se attorney-plaintiffs furthered the fee-shifting statute's purpose of encouraging the effective prosecution of meritorious claims. 499 U.S. at 437. In accord with that holding, we conclude that special circumstances bar an award of fees for services performed by an attorney-parent who represents his or her child in IDEA proceedings.

III.

The district court's judgment is, in all respects,

AFFIRMED.