244 F.Supp.2d 1331 (2003)
MATTHEW V., by his Father and Next Friend, CRAIG V.; Craig V.; and Chris Vance, Plaintiffs,
v.
DEKALB COUNTY SCHOOL SYSTEM; Dekalb County School District; and Dekalb County Board of Education Defendants.
No. CIV.A. 1:02-CV-456-R.
United States District Court, N.D. Georgia, Atlanta Division.
February 11, 2003.
*1333 Chris E. Vance, Office of Chris E. Vance, Decatur, Counsel for Plaintiffs.
J. Stanley Hawkins, Weeks & Candler, Atlanta, Wayne E. Brooks, Office of William Tinkler, Jr., Decatur, Counsel for Defendants.

ORDER
STORY, District Judge.
Now before the Court for consideration are Defendants' Motion for Summa Judgment [9-1] and Plaintiffs' Motion for Summary Judgment [11-1]. After reviewing the entire record, the Court enters the following Order.

1. Background
Unless otherwise noted, the following facts are undisputed. Plaintiff Matthew V. is a disabled elementary student who receives special education and related services. He has had an Individualized Education Plan ("IEP") with Defendant De-Kalb County School System pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq., since 1997. In the summer of 2000, Matthew's IEP team recognized the need for an assistive technology ("AT") evaluation, which the school provided in September 2000.
Matthew's parents were not satisfied with the AT evaluation and requested an independent AT evaluation. However, in October 2000, they offered to pay for the AT evaluation if the school system would pay for a less expensive test conducted by a Ms. Dillard, an occupational therapist "who specializes in handwriting" and would conduct an evaluation of Matthew's handwriting ability.[1] (Banks Aff. Ex. I.[2]) The school system responded with a letter dated November 7, 2000, indicating that it would consider paying for Ms. Dillard's evaluation, but would make that determination after receiving a copy of her bill and evaluation. (Banks Aff. Ex. 2.) Indeed, the school system emphasized its view that it was not required to pay for an independent evaluation prior to its performance. *1334 (Id.) Matthew's parents responded by a letter dated November 9, 2000, stating their position that the school must either request a due process hearing or provide an independent evaluation at school expense. (Banks Aff. Ex. 3.) "Under the circumstances," the Vances requested an independent AT evaluation at public expense. (Id.) On November 17, 2000, the school replied that the Vances could request a due process hearing, and it reiterated that it would consider paying for Ms. Dillard's evaluation only after it was performed. (Banks Aff. Ex. 4.) However, the school noted that it would pay for the evaluation as long as it was not performed "in an obviously inappropriate manner." (Id.) The Vances replied by a letter dated November 24, 2000, asking the school system to either provide an independent AT evaluation or request a due process hearing. (Banks Aff. Ex. 5.) The school system responded on November 27, 2000 that "as long as Ms. Dillard's evaluation is not obviously defective, the school system will pay for it." (Banks Aff. Ex. 6.)
On November 29, 2000, the Vances again asked for information from the school about where an independent educational evaluation could be obtained. (Banks Aff. Ex. 7.) Finally, the Vances requested a mediation, and ultimately, they sought a due process hearing in January 2001. (Banks Aff. Ex. 10.) A Notice of Hearing was filed by the state administrative law judge ("ALJ") on January 25, 2001.
In the meantime, Matthew's parents obtained an independent AT evaluation at their own expense on December 7, 2000. The school system received a copy of the AT evaluation on January 26, 2001, and gave Ms. Vance a check for the cost of the evaluation, $491, on February 5, 2001, just prior to a hearing before the ALJ on Plaintiffs Motion for Summary Determination.
The ALJ granted Plaintiffs motion in a decision dated February 28, 2001. In the Initial Decision, the judge concluded that the Vances' November 9 letter contained a request for an independent educational evaluation at public expense. Thus, "Respondent should have requested a due process hearing or provided the evaluation at public expense." (Initial Decision, Conclusions of Law ¶ 2.) However, the ALJ did not consider Plaintiffs' request for attorney's fees because she determined that she did not have authority to grant such fees. Matthew's mother, Chris Vance, is an attorney and member of the Georgia Bar Association. During the due process procedure, Ms. Vance represented Matthew.
Plaintiffs filed this action pursuant to 20 U.S.C. § 1415(i)(3)(B), seeking attorney's fees and costs incurred in the state proceedings. They also request an award of costs and expenses, including attorney's fees, associated with this litigation. Both parties have moved for summary judgment.

II. Discussion

A. IDEA Framework
Congress promulgated the IDEA with the purpose of ensuring "that all children with disabilities have available to them a free appropriate public education ...." 20 U.S.C. § 1400(d)(1)(A); Cory D. ex rel. Diane D. v. Burke County Sch. Dist, 285 F.3d 1294, 1298 (11th Cir.2002) ("The fundamental objective of the IDEA is to empower disabled children to reach their fullest potential by providing a free education tailored to meet their individual needs."). To receive federal funds pursuant to the IDEA, states must comply with the statute's requirements. Id. § 1412(a). For example, schools must provide an IEP for each child with a disability. Id. § 1412(a)(4). As part of formulating an IEP, schools must conduct an initial evaluation *1335 (and reevaluations, when necessary) of the child. Id. § 1414(a). Further, parents who disagree with the school's evaluation may request "an independent educational evaluation of the child" at public expense Id. § 1415(b); see 34 C.F.R. § 300.502 (setting forth criteria). The IDEA also establishes numerous procedural safeguards for "children with disabilities and their parents." 20 U.S.C. § 1415(a). Among these safeguards are the availability of a due process hearing before a state agency, id. § 1415(f), and the right of a party aggrieved by the state agency to bring a civil action in a U.S. district court. Id. § 1415(I)(2).
The IDEA further gives district courts discretion to "award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." Id. § 1415(i)(3)(B). Thus, parents may bring an independent claim for attorney's fees in a district court after their child prevails before a state ALJ. Mitten v. Muscogee County Sch. Dist, 877 F.2d 932, 935 (11th Cir.1989). Whereas substantive administrative law claims are reviewed by the district court "as a quasi-appellate court," an independent claim for attorneys' fees places the district court in its more usual trial court role. Ga. State Dep't of Educ. v. Derrick C., 314 F.3d 545, 550 (11th Cir.2002). Finally, "[although the awarding of fees is termed `discretionary,' ... the discretion is narrow and the reasons given in support of the discretion are subject to appellate review." Mitten, 877 F.2d at 936.

B. Summary Judgment
Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the non-movant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to showthat a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
Here, Defendants base their motion on three independent arguments: (1) Matthew's attorney is also his mother; (2) Plaintiffs were not prevailing parties before the ALJ; and (3) Plaintiffs unreasonably refused settlement offers and failed to obtain more favorable results. Plaintiffs dispute these arguments and contend that Matthew was the prevailing party in the administrative hearing. While the Court holds that an attorney-parent may recover fees pursuant to the IDEA, it nevertheless holds that Plaintiffs did not prevail; thus, the Court does not consider whether Plaintiffs unreasonably refused settlement offers.

1. Recovery of fees for attorney-parent's representation
Matthew's mother, Ms. Vance, represented Matthew before the ALJ in her capacity as an attorney. Raising an apparent issue of first impression in this circuit, Defendants contend that Matthew and his parents are barred from collecting attorneys' fees for Ms. Vance's representation. Defendants' argument begins with Kay v. Ehrler, 499 U.S. 432, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991). There, the Supreme Court held that an attorney who had represented himself successfully in a *1336 civil rights action could not recover attorney's fees under 42 U.S.C. § 1988.[3]Id. at 437, 111 S.Ct. 1435. The Court wrote, "[although this section was no doubt intended to encourage litigation protecting civil rights, it is also true that its more specific purpose was to enable potential plaintiffs to obtain the assistance of competent counsel in vindicating their rights." Id. at 436, 111 S.Ct. 1435. When a litigant-even a lawyer-represents himself pro se, the Court reasoned, he is at a disadvantage because he is deprived of the judgment of an independent third party. Id. at 437, 111 S.Ct. 1435. Thus, "the statutory policy of furthering the successful prosecution of meritorious claims is better served by a rule that creates an incentive to retain counsel in every such case." Id. at 438, 111 S.Ct. 1435.
Two other circuits have held that Kay mandates a bar on awarding fees where a parent represented his child as an attorney. Woodside v. Sch. Dist. of Phila. Bd. of Educ, 248 F.3d 129 (3d Cir.2001); Doe v. Bd. of Educ. of Baltimore, 165 F.3d 260 (4th Cir.1998). In Doe, an attorney-parent represented his disabled son in state administrative proceedings and before the district court, obtaining a substantively "excellent result." 165 F.3d at 263. Nevertheless, the Fourth Circuit upheld the district court's denial of attorney's fees. Id. at 265. The court first recognized that parents and children are distinct legal entities under the IDEA; thus, it rejected the notion that an attorney-parent's representation of his child in IDEA proceedings actually constitutes pro se representation like in Kay. Id. at 263. Yet the court emphasized Kay's relevance: "[l]ike attorneys appearing pro se, attorney-parents are generally incapable of exercising sufficient independent judgment on behalf of their children to ensure that `reason, rather than emotion,' will dictate the conduct of the litigation." Id. (quoting Kay, 499 U.S. at 437, 111 S.Ct. 1435). Further, the court reasoned that loving parents would fight for their disabled children regardless of any statutory fee award, and so statutory fees were not needed to ensure a parent's efforts on behalf of his child. Id. at 264. In contrast, "the IDEA fee-shifting provision should be read to encourage parents to obtain independent legal services." Id.
The Third Circuit, in an opinion authored by Judge Phyllis A. Kravitch,[4] echoed Doe's holding in Woodside v. School District of Philadelphia Board of Education, 248 F.3d 129. There, like here, the attorney-parent successfully represented his disabled son in an administrative due process hearing and later brought an action in district court to recover attorney's fees. Id. at 130. The district court entered summary judgment in favor of the school district, and the circuit court affirmed. Id. at 130-31. The Third Circuit acknowledged that a parent who represents his child under the IDEA does not act pro se; nevertheless, the court agreed with the reasoning set forth in Kay and Doe. Id. at 131. As Woodside described the rationale, "because the policy ... is to encourage the effective prosecution of meritorious claims, ... the better rule is one which encourages parents to seek independent, emotionally detached counsel *1337 for their children's IDEA actions ...." Id.; see also Rappaport v. Vance, 812 F.Supp. 609, 612 (D.Md.1993) (concluding attorney-parent acts pro se and relying on Kay for same result); Miller v. West Lafayette Cmty. Sch. Corp., 665 N.E.2d 905, 906-07 (Ind.1996) (similar).
Plaintiffs question the leap that the Doe and Woodside courts took in extending Kay. As they emphasize, Ms. Vance did not-and could not-proceed pro se on behalf of Matthew. In Devine v. Indian River Sch. Bd., 121 F.3d 576 (11th Cir.1997), the Eleventh Circuit refused a non-attorney father's request to represent his son pro se in an IDEA proceeding in federal court. Id. at 582. The court reasoned that nothing in the statutory language of the IDEA permits non-attorney parents to represent their children in such a manner. Id. at 581-82. Indeed, the court noted that this result "helps ensure that children rightfully entitled to legal relief are not deprived of their day in court by unskilled, if caring, parents." Id. at 582. As Plaintiffs argue, Devine stands for the proposition that, unlike Kay, parents are separate legal entities from their children. Cf. Kattan by Thomas v. District of Columbia, 995 F.2d 274, 276 (D.C.Cir.1993) (declining to reconsider, in light of Kay, pre-Kay decision awarding attorney fees to parent-attorney under IDEA predecessor where defendant had waived its argument on availability of fees); Collins v. Chandler Unified, Sch. Dist, 644 F.2d 759, 763-64 (9th Cir.1981) (holding non-lawyer parent-litigant entitled to fees under § 1988); Amy M. v. Timberlane Reg'l Sch. Dist, No. CIV. 99-269-B, 2000 WL 1513769 at *5 (D.N.H. Aug. 11, 2000) (unpublished opinion) (declining to extend Doe where child was represented by great-aunt-attorney in IDEA proceedings); McLaughlin by McLaughlin v. Boston Sch. Comm., 976 F.Supp. 53, 64-65 (D.Mass.1997) (distinguishing Doe where father-attorney represented child in § 1983 action and sought fees under § 1988; father had tried unsuccessfully to enlist other lawyers to represent his daughter, and unlike in IDEA, father had no standing on his own for purposes of § 1983).
The Court respectfully disagrees with the rationale of Doe and Woodside. First, nothing in the language of the statute prohibits the award of fees in these circumstances. Indeed, the IDEA, unlike § 1988 which was at issue in Kay, expressly describes the circumstances in which fees are unavailable. See 20 U.S.C. § 1415(i)(3)(D) (prohibiting fees where school made written offer of settlement more than 10 days before proceeding or where fees relate to meeting of IEP team). Under the familiar canon of construct on, expressio unius et exclusio alterius; that is, the expression of one thing is the exclusion of others. Plumbers & Steamfitters Local No. 150 Pension Fund v. Vertex Constr. Co., Inc., 932 F.2d 1443, 1449 (11th Cir.1991). If Congress had wished to preclude the award of fees in these circumstances, it would have said so in its list of other exclusions. Moreover, the legislative history of the statute does not support the Doe and Woodside interpretations. See S. Rep No. 99-112, at 13 (1985), reprinted in 1986 U.S.C.C.A.N. 1798, 1803 ("It is the committee's intention that a parent or legal representative should be free to select and be represented by the attorney of his/her choice.")
Second, that parents and then children are distinct entities for purposes of IDEA claims seems difficult to brush aside. See Devine, 121 F.3d at 581-82. This separate status supports the conclusion that a parent-attorney performs in the "agency relationship" contemplated by Kay, 499 U.S. at 435-36, 111 S.Ct. 1435.[5] Third, lawyers in *1338 Georgia are subject to the Georgia Rules of Professional Conduct. For example, a lawyer owes her client competent representation, and she generally shall not represent a client if there is significant risk that the lawyer's own interest will materially and adversely affect the representation Ga. Rules of Prof 1 Conduct R. 1.1, 1.7 (2001) ("Ga.Rules").[6] Given that the maximum penalty for violation of Rules 1.1 and 1.7 is disbarment, a parents attorney is certainly open to negative consequences for failing to abide by the rules of conduct.[7] Finally, a brief economic analysis suggests that attorney's fees should be available under these circumstances. Even though a parent-attorney may be his child's most valuable advocate as a parent, as an attorney, the parent is subject to opportunity costs inherent in performing legal work for her child rather than for a paying client. In some cases, a parentattorney may be the best attorney the child could obtain, and the availability of fees would align the economic realities of practicing law with the IDEA's primary purposes.[8]See McLaughlin, 976 F.Supp. 53, 64-65 (parent represented child after unsuccessfully attempting to obtain other counsel).
While the Court recognizes that this issue is a close one, it declines to follow Doe and Woodbine in light of the text of the statute, its legislative history, and the distinctions between the facts here and in Kay. As described below, however, Plaintiffs are nevertheless unable to recover fees.

2. Prevailing party under the IDEA
Defendants contend that Plaintiffs were not the "prevailing party" within the meaning of the statute because the administrative ruling did not alter the parties' relationship. Plaintiffs respond that they prevailed because the AL. stated that Defendants should have either requested a due process hearing or provided him an independent evaluation at public expense. Additionally, Plaintiffs submit that they prevailed under the "catalyst theory." In reply, Defendants argue that even if Plaintiffs did prevail, the administrative ruling was in error. The Court addresses the administrative ruling before turning to a prevailing party analysis.

a. Correctness of ALJ's determination
As an initial matter, to the extent that the parties dispute the correctness of the *1339 ALJ's determination, that issue is not properly before this Court. In particular, Defendants argue that because they paid the Vances for Matthew's independent evaluation prior to the due process hearing, the issue was moot and the ALJ should not have rendered a decision. Plaintiffs respond that the dispute was not moot because there was still an issue to be determined: whether Defendants should have provided the independent evaluation. There was some discussion of mootness during the hearing before the ALJ. (Tr. at 35-36.) However, the ALJ's order does not set forth any analysis of mootness.
Regardless of the propriety of the ALJ's determination, this Court may not review it because Defendants have not followed the proper procedures for challenging the outcome of a due process hearing. First, Defendants should have appealed the outcome to Georgia's educational agency. The IDEA provides that parties "aggrieved by the findings and decision rendered" in a due process hearing may appeal to the State educational agency. 20 U.S.C. § 1415(g). Any party so aggrieved "who does not have the right to an appeal under subsection (g)" may bring a civil action in any appropriate state court or in a federal district court. Id. § 1415(i)(2)(A). The IDEA thus requires exhaustion of administrative remedies prior to filing suit in federal court. N.B. by D.G. v. Alachua County Sch. Bd., 84 F.3d 1376, 1378-79 (11th Cir.1996); Doe v. Walker County Bd. of Educ, 1997 WL 866983, at *4 (N.D.Ga. Sept.19, 1997). After exhaustion, federal district courts apply a modified de novo review when they sit in the "quasi-appellate" role of reviewing the state educational agency's decision. Ga. State Dep't of Educ. v. Derrick C, 314 F.3d at 548. In contrast, actions for attorney's fees do not place the district court in an appellate posture. Id.; see 20 U.S.C. § 1415(i)(3)(B) (attorney's fees provision).
Here, Defendants state that they did not appeal the decision in the due process hearing because "there was no live controversy to support an appeal." (Defs.' Mot. for Summ. J., at 14 n. 7.) Essentially, this statement is no different than Defendant's argument that the issue was moot by the time the ALJ issued her determination. Thus, Defendants' reason for failing to appeal seems instead to be one of the reasons they might have appealed. Regardless, Defendants did not appeal, nor did they bring an action before this Court under § 1415(I)(2). Thus, the Court assumes, without deciding, that the ALJ made a proper determination. Cf. Dep't of Educ. v. Rodarte ex rel. Chavez, 127 F.Supp.2d 1103, 1115-16 (D.Haw.2000) (Where school district's substantive appeal was moot, "[t]he Court can find no case stating that if an appeal is moot, a court is nevertheless obligated to investigate the merits in order to determine who should have been the prevailing party for purposes of allocating attorneys' fees.").

b. Prevailing party and catalyst theory

Defendants contend that Matthew was not the prevailing party before the ALJ because he was not awarded any relief. As Defendants argue, "Plaintiff specifically requested a monetary award and in return only received an order which restated ... the law." (Defs.' Mot. for Summ. J., at 12.) Even though the ALJ adopted Plaintiffs' argument relative to what Defendants should have done, Defendants urge that the order did not alter the legal relationship of the parties. Plaintiffs respond with alternative arguments. First, they seem to contend that the ALJ's determination was in the nature of a declaratory judgment. (See Pls.' Mot. for Summ. J., at 20 (citing federal and state declaratory judgment statutes).) Indeed, they argue that the order altered the parties' legal relationship *1340 because, subsequent to the administrative ruling, Defendants in another matter provided the names of independent evaluators and agreed to pay for an independent evaluation prior to its taking place. Second, Plaintiffs urge that they were prevailing parties because the imminent due process hearing was the catalyst for Defendants' reimbursement of the cost of the independent evaluation.
A party "prevails" when actual relief on the merits of his claim "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff. Farrar v. Hobby, 506 U.S. 103, 111, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). Whatever relief the plaintiff secures must directly benefit him at the time of judgment. Id. Thus, the moral satisfaction of a favorable statement of law cannot bestow prevailing party status. Id. at 112, 113 S.Ct. 566; Hewitt v. Helms, 482 U.S. 755, 762, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987). A declaratory judgment does not automatically render a party "prevailing." Rhodes v. Stewart, 488 U.S. 1, 3, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988). Instead, a declaratory judgment will constitute relief "if, and only if, it affects the behavior of the defendant toward the plaintiff." Id. at 4, 109 S.Ct. 202. Thus, if a case was moot before judgment issued, the judgment can afford the plaintiff no relief, and consequently, no attorney's fees. Id.
At the end of the rainbow lies not a judgment, but some action (or cessation of action) by the defendant that the judgment procures .... Redress is sought through the court, but from the defendant. This is no less true of a declaratory judgment suit than of any other action. The real value of the judicial pronouncement ... is in the settling of some dispute which affects the behavior of the defendant towards the plaintiff.

Hewitt v. Helms, 482 U.S. at 761, 107 S.Ct. 2672 (emphasis in original).
Here, even if the ALJ's determination was in the nature of a declaratory judgment, it does not alter the legal relationship between the parties. Plaintiffs argued before the ALJ that "respondent school system either had to provided petitioner an independent evaluation at public expense or ask for a due process hearing...." (Pet'r's Mot. for Summ. Determination at 1 (ALJ R. [10-1]).) When the ALJ issued her determination, however, the school system had already given Plaintiffs a cheek for $491. The ALJ's order acknowledges that fact and states, "Respondent should have requested a due process hearing or provided the evaluation at public expense." (Initial Decision, Conclusions of Law ¶ 2.)
The ALJ merely made a favorable statement of law which governed the parties prior to, as well as after the proceeding. While the determination may be said to have provided moral satisfaction to Plaintiffs, it did not require Defendants to modify their behavior toward Plaintiffs in any way. See Rhodes v. Stewart, 488 U.S. at 4, 109 S.Ct. 202 (where plaintiffs were no longer prisoners, declaratory judgment in their favor afforded them no relief so that they were not prevailing parties). Thus, the ALJ's determination itself cannot bestow prevailing party status on Plaintiffs.
Plaintiffs, however, argue that Matthew was the prevailing party under the "catalyst theory." As they describe, initiating the due process hearing caused Defendants to alter their behavior by reimbursing Plaintiffs for the independent evaluation. This argument may have been viable prior to the Supreme Court's decision in Buckhannon Bd. & Care Home, Inc. v. W.V. Dep't of Health & Human Resources, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). See Royal Crown Cola Co. v. *1341 Coca-Cola Co., 887 F.2d 1480, 1486 (11th Cir.1989) ("[E]ven in the absence of judicial relief, a plaintiff may still be a prevailing party [under the Clayton Act] if the plaintiff can show his or her lawsuit was a causal link prompting some remedial action."); W.T. by Tatum v. Andalusia City Sch., 977 F.Supp. 1437, 1443 (M.D.Ala. 1997) (applying catalyst test in IDEA case). As described below, however, Buckhannon foreclosed use of the catalyst theory for "prevailing party" statutes.
In Buckhannon, various assisted living homes brought suit in federal court to challenge a cease and desist order issued pursuant to a state safety requirement by the West Virginia State Fire Marshal. 532 U.S. at 600-01, 121 S.Ct. 1835. The plaintiffs alleged that the safety requirement violated the Fair Housing Amendments Act of 1988 ("FHAA") and the Americans with Disabilities Act of 1990 ("ADA"). Id. at 601, 121 S.Ct. 1835. During discovery, the West Virginia Legislature enacted two bills eliminating the safety requirement, and the defendants moved to dismiss the case as moot. Id. The Plaintiffs requested attorney's fees as the "prevailing party" under the fee-shifting provisions of both the FHAA and the ADA, arguing pursuant to the catalyst theory that they achieved their desired result because the lawsuit brought about a voluntary change in the defendants' conduct. Id,
The Supreme Court held that the "prevailing party" fee-shifting provisions of the FHAA and ADA did not authorize fees under the catalyst theory. Id. at 610, 121 S.Ct. 1835. First, the Court reviewed its decisions awarding fees, explaining that it has always relied on the principle that "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change." Id. at 605, 121 S.Ct. 1835. Thus, private settlements entered without judicial approval and oversight do not support prevailing party status. Id. at 604 n. 7, 121 S.Ct. 1835. Second, the Court examined the legislative history of § 1988, upon which the FHAA and ADA provisions were modeled, and concluded it insufficient to alter "the accepted meaning of the statutory term." Id. at 607-08,121 S.Ct. 1835. Finally, the Court evaluated various policy considerations, rejecting in particular the notion that the catalyst theory is necessary to "prevent defendants from unilaterally mooting an action before judgment" to avoid fees. Id. at 608, 121 S.Ct. 1835.
While Buckhannon focused on the FHAA and ADA fee-shifting provisions, the opinion was worded broadly in terms of its applicability to other fee-shifting provisions that employ the "prevailing party" standard. The Court stated, "we have interpreted these fee-shifting provisions consistently...." Id. at 603 n. 4, 121 S.Ct. 1835. Further, the Court constructed its reasoning from cases interpreting other "prevailing party" fee-shifting provisions. See, e.g., id. at 604, 121 S.Ct. 1835 (citing Farrar v. Hobby, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494) (§ 1988); id. at 602-03, 121 S.Ct. 1835 (citing Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(k); Voting Rights Act Amendments of 1975, 42 U.S.C. § 1973Z (e)). Indeed, the Court described the words "prevailing party" as a "legal term of art." Id. at 603, 121 S.Ct. 1835. Moreover, the FHAA and ADA fee-shifting provisions, like that of IDEA, were modeled after § 1988. See Buckhannon, 532 U.S. at 624 n. 1, 121 S.Ct. 1835 (Ginsberg, J., dissenting) (describing legislative histories).
The Eleventh Circuit has not considered whether Buckhannon mandates the end of the catalyst theory in IDEA cases. However, the Circuit's analysis of a different fee-shifting provision illuminates the issues *1342 here. See generally Loggerhead Turtle v. The County Council of Volusia County, 307 F.3d 1318 (11th Cir.2002) (evaluating fee provision of Endangered Species Act). In Loggerhead Turtle, the plaintiffs challenged, inter alia, beachfront lighting ordinances that they claimed harmed sea turtles. Id. at 1320. During the case's pendency, the defendant amended its lighting ordinances, effectively mooting the issue. Id. at 1321. The plaintiffs sought attorney's fees, arguing that their suit was the catalyst for improved protection of sea turtles. Id. On appeal, the court considered the district court's award of attorney's fees to the plaintiffs in light of Buckhannon. Id. at 1322.
The Circuit concluded that Buckhannon did not invalidate the catalyst test as a basis for fee awards under the Endangered Species Act ("ESA"). Id. at 1325. First, the court emphasized that the ESA's fee-shifting provision is worded differently: courts may award attorney's fees "whenever the court determines such award is appropriate." Id.; 16 U.S.C. § 1540(g). Unlike the "prevailing party" language at issue in Buckhannon, Congress intended that "whenever... appropriate" "extended to suits that forced defendants to abandon illegal conduct, although without a formal court order." 307 F.3d at 1326 (quoting Ruckelshaus v. Sierra Club, 463 U.S. 680, 686 n. 6, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983) (interpreting "whenever ... appropriate" language in Clean Air Act)). In particular, the court reasoned that Buckhannon addressed only the meaning of "prevailing party," a "legal term of art" that the Court found to have a "rather clear meaning." Id. (internal citations omitted).
Thus, implicit in Loggerhead Turtle is the conclusion that Buckhannon should be applied similarly to all "prevailing party" statutory analyses. Indeed, courts in other jurisdictions have concluded that Buckhannon extends to the IDEA. See John T. ex rel. Paul T. v. Del. County Intermediate Unit, 318 F.3d 545, 2003 WL 194874, at *9 (3d Cir.2003) (noting catalyst theory for IDEA fees is "simply not viable after Buckhannon"); J.C. v. Reg'l Sch. Dist. 10, Bd. of Educ, 278 F.3d 119, 123-24 (2d Cir.2002) (applying Buckhannon to IDEA); Ostby v. Oxnard Union High, 209 F.Supp.2d 1035, 1042 (C.D.Cal.2002) (same); Akinseye v. District of Columbia, 193 F.Supp.2d 134, 139 (D.D.C.2002) (same); J.S. v. Ramapo Cent. Sch. Dist, 165 F.Supp.2d 570, 574-76 (S.D.N.Y.2001) (same); Jose Luis R. v. Joliet Township High Sch, Dist. 204, 2002 WL 54544, at *2-3 (N.D.Ill. Jan. 15, 2002) (unpublished opinion) (same); Brandon K. v. New Lenox Sch. Dist, No. 01C4625, 2001 WL 1491499, at *2 (N.D.Ill. Nov. 23, 2001) (unpublished opinion) (same); Baer v. Klagholz, 346 N.J.Super. 79, 786 A.2d 907, 910 (2001) (same). See generally Mark C. Weber, Special Education Attorney's Fees After Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health and Human Services, 2002 BYU Educ. & L.J. 273 (discussing Buckhannon's impact on IDEA).
Because the Court concludes that Buckhannon applies to IDEA`S fee shifting provision, the next step is to determine whether the Defendants' payment of $491 to Plaintiffs was more than a voluntary change made without judicial sanction. In the Eleventh Circuit, when a court either incorporates the terms of a settlement into its final order or expressly retains jurisdiction to enforce the settlement, the result will bear the necessary judicial imprimatur to support prevailing party status. American Disability Association, Inc. v. Chmielarz, 289 F.3d 1315, 1320 (11th Cir. 2002). In Chmielarz, the Eleventh Circuit rejected a rigid reading of Buckhannon *1343 that would bestow prevailing party status only on those who obtained a consent decree or judgment. Id. at 1319.[9] Instead, "the essential test ... requires the plaintiff to achieve a judicially sanctioned change in the legal relationship of the parties." Id. at 1321 (internal quotations omitted). Even though the parties reached a private settlement, therefore, the plaintiffs prevailed because the settlement was submitted in writing for the district court's approval, and the court expressly retained jurisdiction solely for the purpose of enforcing the agreement. Id. at 1318.
Here, the facts are far removed from Chmielarz. The payment, while referenced in the ALJ's order, did not accompany any formal agreement between the parties that was also incorporated into the order. Nor did the order purport to retain any power to enforce any agreement between the parties. At most, the payment was a "voluntary change in conduct" fitting squarely within the now-unavailable catalyst theory. Buckhannon, 532 U.S. at 605, 121 S.Ct. 1835. The Court is sympathetic to Plaintiffs' argument that "a school system could deny a disabled child's rights..., force the issue to due process, and then avoid its statutory duty to pay for attorney's fees by simply paying petitioner's damages the morning of the hearing...." (Pls.' Reply to Defs.' Mot. for Summ J., at 4.) Indeed, the Court in no way approves such behavior. See Weber, supra, at 284 (criticizing Buckhannon for its potential to create this result in IDEA cases). Nevertheless, the Supreme Court expressly considered and rejected that very argument. Buckhannon, 532 U.S. at 608, 121 S.Ct. 1835.
To summarize, the Court finds that the ALJ's determination did not bestow prevailing party status on Plaintiffs because it did not alter the legal relationship between the parties. Moreover, Plaintiffs may not recover based on the catalyst theory after Buckhannon. Finally, Defendants' payment to Plaintiffs was a voluntary settlement made without judicial imprimatur and so cannot support prevailing party status. Accordingly, Plaintiffs are not entitled to attorney's fees and costs as a matter of law.

III. Conclusion
Defendants' Motion for Summary Judgment [9-1] is hereby GRANTED, and Plaintiffs' Motion for Summary Judgment [11-1] is hereby DENIED.
NOTES
[1] Defendants characterize the separate evaluation as a "handwriting evaluation," while Plaintiffs call it an "occupational therapy evaluation." (See Defs.' Resp. to Pls.' Statement of Material Facts as to Which There are No Genuine Issues, ¶ 3 (identifying discrepant characterization).) The characterization evaluation is not material to the resolution of this case; the Court refers to it asa handwriting evaluation or "Ms Dillard's evaluation."
[2] The evidence upon which Defendants rely is compiled in the state administrative record where this matter was originally considered. This information, and the correspondence between the parties, is located at Docket Number 10-1.
[3] The language of IDEA's fee provision echoes that of § 1988, and it is generally interpreted like § 1988. See 42 U.S.C. § 1988 ("the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee"); W.L.G. v. Houston County Bd. of Educ, 975 F.Supp. 1317, 1322 (M.D.Ala. 1997) (§ 1988 analysis appropriate for IDEA fee dispute); S.Rep. No. 99-112, at 13-14 (1985), reprinted in 1986 U.S.C.C.A.N. 1798, 1803-04 (illustrating intent for similar interpretation).
[4] Judge Kravitch, a Senior Judge for the Eleventh Circuit Court of Appeals, was sitting by designation. Woodside, 248 F.3d at 129.
[5] It is not clear under Georgia law that a child could sue his parent for legal malpractice. Compare Coleman v. Coleman, 278 S.E.2d 114, 114, 157 Ga.App. 533, 533 (1981) ("We have long held as a matter of public policy that an unemancipated minor may not sue a parent for injury arising from a negligent act."), with Grant v. Grant, 41 S.E.2d 534, 536, 202 Ga. 40 (1947) (son brought action for injunction and accounting against mother; mother owned dance hall but son operated it as her agent and mother was therefore entitled to exclusive possession of the business). As discussed below, however, ethical rules may provide an additional method of ensuring competent representation.
[6] Attorneys may represent their family members; for example, the Rules expressly allow attorneys to prepare wills for family members, even if such a will makes a bequest to the attorney. Ga. Rules, R. 1.8.
[7] The Georgia Rules do not appear to limit who may make a grievance about a particular attorney. See Ga. Rules, R. 4-202. Thus, such a grievance could be made by opposing counsel, or even the child's other parent or another family member.
[8] On the other hand, any concerns that a parent-attorney may spend an inordinate amount of time on the matter and seek excessive fees are ameliorated by the fact that fee requests are subject to the Court's approval; further, inappropriate charges may be excluded from any award. See 20 U.S.C. § 1415(i)(3)(C) (Fees "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished.").
[9] There is a circuit split whether Buckhannon limits prevailing party status to outcomes embodied in consent decrees or judgments. See Christina A. v. Bloomberg, 315 F.3d 990 (8th Cir.2003) (pinpoint unavailable) (Melloy, J., dissenting) (noting split). Compare id. (reversing award of fees based on settlement agreement, even though agreement was approved by district court and court retained jurisdiction, because agreement was not formal consent decree), and J.C. v. Reg'l Sch. Dist. 10, Bd. of Educ., 278 F.3d at 123-24 (only consent decrees and judicial orders bestow prevailing party status), with Chmielarz, 289 F.3d at 1320, and Brandon K. v. New Lenox Sch. Dist., No. 01C4625, 2001 WL 1491499, at *2 (classifying plaintiffs as prevailing parties where settlement agreement was transcribed and entered as record in due process hearing). But see Ostby v. Oxnard Union High, 209 F.Supp.2d at 1042 (written mediation agreement, signed by both parties and mediator, sufficiently altered legal relationship to bestow prevailing party status even though agreement was not part of judicial order).